926 F.2d 986
 18 Fed.R.Serv.3d 1274
 Barry HUGHES, individually and as the parent and natural
guardian of Nicole Ann Hughes and Cale Joseph
Hughes, Plaintiffs-Appellees,
v.
CITY OF FORT COLLINS, COLORADO, a municipal corporation;
Bruce Glasscock; Robert McKibben; Paul Landolt; Francis
Gonzales; Ray Martinez; Joseph Clingan; Frank Russell;
John Bradshaw; Sandra Gibson; Ruth Shanahan; James
Anderson, Defendants,
and
Stuart VanMeveren; Terence Gilmore; and Jerry Roselle,
Defendants-Appellants.
Barry HUGHES, individually and as the parent and natural
guardian of Nicole Ann Hughes and Cale Joseph
Hughes, Plaintiffs-Appellees,
v.
CITY OF FORT COLLINS, COLORADO, a municipal corporation;
Bruce Glasscock; Robert McKibben; Paul Landolt; Francis
Gonzales; Ray Martinez; Frank Russell; John Bradshaw;
Sandra Gibson; Ruth Shanahan; James Anderson, Defendants-Appellants,
and
Joseph Clingan; Stuart VanMeveren; Terence Gilmore; Jerry
Roselle, Defendants.
Barry HUGHES, individually and as the parent and natural
guardian of Nicole Ann Hughes and Cale Joseph
Hughes, Plaintiffs-Appellees,
v.
CITY OF FORT COLLINS, COLORADO, a municipal corporation;
Bruce Glasscock; Robert McKibben; Paul Landolt; Francis
Gonzales; Ray Martinez; Frank Russell; John Bradshaw;
Sandra Gibson; Ruth Shanahan; James Anderson; Stuart
VanMeveren; Terence Gilmore; Jerry Roselle, Defendants,
and
Joseph Clingan, Defendant-Appellant.
 Nos. 90-1205, 90-1209 and 90-1213.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 25, 1991.
 
 William F. Eggert, Malcolm S. Mead, Hall & Evans, Denver, Colo., for City of Fort Collins, Colo., Bruce Glasscock, Robert McKibben, Paul Landolt, Francis Gonzales, Ray Martinez, Frank Russell, John Bradshaw, Sandra Gibson, Ruth Shanahan, and James Anderson.
 George H. Hass, Hardin, Schmidt, Hass & Zier, Fort Collins, Colo., for Stuart VanMeveren, Terence Gilmore and Jerry Roselle.
 Louise B. Bruno, Bruno, Bruno & Colin, P.C., Denver, Colo., for Joseph Clingan, on a consolidated brief for defendants-appellants.
 No brief was filed on behalf of the plaintiffs-appellees.
 Before ANDERSON, TACHA, and BRORBY, Circuit Judges.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 This is an appeal from a district court order denying defendants' motions for sanctions under Rule 11 of the Federal Rules of Civil Procedure. We affirm.[1]
 
 
 2
 Plaintiffs Barry Hughes and his two children brought a civil rights action under 42 U.S.C. Sec. 1983 against the city of Fort Collins, some of its police officers, and certain district attorneys, alleging deprivation of constitutional rights in the murder of Barry Hughes's spouse and the children's mother, Mona Hughes. They asserted that defendants' failure to solve a previous murder and apprehend the perpetrator before he murdered Mona Hughes deprived them of rights guaranteed by the United States Constitution.
 
 
 3
 The defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addition, they all requested that the court impose sanctions pursuant to Rule 11 of the Federal Rules. After a hearing on September 14, 1988, the district court dismissed the complaint for lack of constitutional protection for members of the public against criminal attacks by third parties and for lack of state action. The court denied defendants' motions for sanctions, stating that a good faith argument might be made for a modification of existing law.
 
 
 4
 Plaintiffs appealed the dismissal of their complaint, and defendants cross-appealed the denial of their motions for sanctions. On July 13, 1989, this court affirmed the dismissal of the complaint, reversed the trial court for "summarily refusing to consider the award of sanctions," and remanded for "further proceedings on the defendants' motion[s] for sanctions." On remand, in an order dated June 26, 1990, the district court again denied defendants' motions for sanctions, citing the reason it had already articulated at the September 14th hearing, a reason that "[t]he Tenth Circuit apparently overlooked" in reviewing the record. Defendants once again appeal, arguing that the district court applied the wrong legal standard to its denial of sanctions under Rule 11.
 
 
 5
 In reviewing all aspects of a district court's Rule 11 determination, this court applies an abuse of discretion standard. Under this standard, reversal would be appropriate only if a district court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmarx Corp., --- U.S. ----, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).
 
 
 6
 A deferential standard for reviewing matters of both fact and law has been adopted for several reasons. First, the fact-specific nature of the inquiry demands it. Analogizing to its reasoning in Pierce v. Underwood,[2] the Supreme Court in Cooter & Gell observed:
 
 
 7
 Because a determination whether a legal position is "substantially justified" depends greatly on factual determinations, the Court [in Pierce ] reasoned that the district court was "better positioned" to make such factual determinations. A district court's ruling that a litigant's position is factually well grounded and legally tenable for Rule 11 purposes is similarly fact-specific. Pierce also concluded that district court's rulings on legal issues should be reviewed deferentially.
 
 
 8
 Cooter & Gell v. Hartmarx Corp., 110 S.Ct. at 2460 (citations omitted) (emphasis added).
 
 
 9
 Second, the deferential abuse of discretion standard enhances the goal of judicial economy and serves to maintain the integrity of the trial and appellate courts. As to the appellate court function, the Supreme Court has concluded that a more stringent de novo standard of review for legal determinations would distort the appellate process and, at the same time, fail to advance the development of the law:
 
 
 10
 [A]n appellate court reviewing legal issues in the Rule 11 context would be required to determine whether, at the time the attorney filed the pleading or other paper, his legal argument would have appeared plausible. Such determinations "will either fail to produce the normal law-clarifying benefits that come from an appellate decision on a question of law, or else will strangely distort the appellate process" by establishing circuit law in "a most peculiar, second-handed fashion."
 
 
 11
 Id. (citations omitted).
 
 
 12
 The Supreme Court also noted that the deferential standard of review enhances the trial court's integrity:
 
 
 13
 The district court is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence. Deference to the determination of courts on the front lines of litigation will enhance these courts' ability to control the litigants before them. Such deference will streamline the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court; it will also discourage litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation.
 
 
 14
 Id.
 
 
 15
 The Supreme Court's message is clear. It is not the role of the circuit court to second-guess the district court's Rule 11 determinations. While we are sympathetic with the burdens this litigation has imposed on the City, we are not the district court, and we cannot reverse that court simply because, had we been the triers of fact, we might have decided the case differently. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).
 
 
 16
 The essence of defendants' appeal is that the trial court based its denial of sanctions on an improper hybridization of the old and new standards mandated by Rule 11. By confusing the old subjective standard with the new objective standard, defendants argue, the court "based its ruling on an erroneous view of the law," Cooter & Gell v. Hartmarx Corp., 110 S.Ct. at 2461, thus mandating reversal.
 
 
 17
 We agree that, prior to 1983, Rule 11 spoke in "plainly subjective terms." Nemeroff v. Abelson, 620 F.2d 339, 350 (2d Cir.1980); Burkhart v. Kinsley Bank, 804 F.2d 588, 589 (10th Cir.1986). If a showing of subjective bad faith on the part of an attorney could be shown, fees and costs could be assessed against that attorney. Indianapolis Colts v. Mayor of Baltimore, 775 F.2d 177, 181 (7th Cir.1985). In contrast, the 1983 amendment added language that "in effect changed the standard for finding a violation of the rule from a subjective to an objective standard." Id. The revised standard is characterized by an objective assessment of "reasonableness under the circumstances." Fed.R.Civ.P. 11, Advisory Committee Notes. See also White v. General Motors Corp., 908 F.2d 675, 680 (10th Cir.1990).
 
 
 18
 In pertinent part, Rule 11 now provides that the signature of an attorney on a pleading or motion certifies "that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." In this amended version of the rule, we should note, the term "good faith" modifies the phrase that directly follows it and nothing else. Burkhart v. Kinsley Bank, 804 F.2d at 589. If a pleading is signed in violation of the objective standard enunciated in the rule, "the court ... shall impose ... an appropriate sanction."
 
 
 19
 Defendants assert and we agree that the district court's oral ruling at the September 14th hearing confuses the two standards. Initially, the court describes the current Rule 11 standard quite plainly and accurately. In an attempt at further clarification, however, the court elaborates on the standard, interjecting the subjective phrase "good faith belief" before the objective phrase "formed after reasonable inquiry." This juxtaposition confuses the current standard with the pre-1983 standard. To determine whether the court's denial of sanctions constitutes an abuse of discretion, therefore, we must omit the subjective references and measure the decision solely against the objective standard of the current Rule 11.
 
 
 20
 The Supreme Court has recently described the process for determining whether an attorney has violated Rule 11. Three types of issues must be considered. First, "[t]he court must consider factual questions regarding the nature of the attorney's prefiling inquiry and the factual basis of the pleading or other paper." Cooter & Gell v. Hartmarx Corp., 110 S.Ct. at 2457. Second, "[l]egal issues are raised in considering whether a pleading is 'warranted by existing law or a good faith argument' for changing the law and whether the attorney's conduct violated Rule 11. Finally, the trial court must exercise its discretion to tailor an 'appropriate sanction.' " Id.
 
 
 21
 In this case, we have no indication that the trial court, in its oral ruling, considered either the attorney's prefiling inquiry or the factual basis for the pleadings. We presume, however, that absent these considerations, the court would never have reached the legal issues. Plainly, the court did respond to plaintiffs' legal arguments, orally implying that plaintiffs had made a good faith argument for a modification of existing law:
 
 
 22
 I think there is no such constitutional claim; but I think probably there is room, if one reads Martinez, for inquiring whether these various progeny of Martinez which have been decided in all these circuits really flow from the words of Martinez or whether there is a possible challenge there which needs to be further clarified ultimately by the Supreme Court. Certainly it's established law, I think, in the Tenth, Eleventh, Ninth, Seventh, Sixth circuits; but whether there is an argument which may ultimately be resolved by the Supreme Court in carving out an exception to Martinez, I don't know.
 
 
 23
 R.Vol. II at 17-18. Based on this statement, the court declined to impose sanctions.
 
 
 24
 Prior to determining whether a pleading which requires a change in existing law is warranted, it would be logical for a district court in this circuit to carefully examine the controlling law (i.e. decisions of the Supreme Court, this court, the state courts in diversity cases, and statutes) in terms of its pervasiveness (number of decisions in the circuits and presence or absence of any split in the circuits, as well as possible multiple opinions in this circuit), its recency, its clarity, and its specific relevance to the issues confronting the court, among other things. Then the court would do well to determine whether the proponent of the position has articulated a reasoned and principled basis for the proposed extension, modification, or reversal of the controlling law.
 
 
 25
 A mere assertion that the controlling law is wrong should, at the very least, be viewed critically by the district court.[3] An unadorned and forlorn hope that a court may change settled law at some future time ought not to be enough. This case comes dangerously close to that category.
 
 
 26
 Nonetheless, the district court plainly stated in its oral ruling that it believed an argument could be made for an exception to or clarification of the controlling law. And, while we believe the case is a close one, under the clear standard so recently articulated by the Supreme Court in Cooter & Gell v. Hartmarx Corp., we cannot say that the district court abused its discretion in refusing to impose sanctions pursuant to Rule 11. The decision of the district court is accordingly AFFIRMED.
 
 
 
 [1]
 After examining the brief and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument
 
 
 [2]
 In Pierce, the Supreme Court held that, under the Equal Access to Justice Act, an abuse of discretion standard should be used to review a district court's determination that the United States' position was "substantially justified." A position is "substantially justified" if it "has a reasonable basis in law or fact." Pierce v. Underwood, 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 2550 n. 2, 101 L.Ed.2d 490 (1988)
 
 
 [3]
 As an example of plaintiffs' attorney's response to controlling law, we note that when informed of the decision in DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), and its direct applicability to this case, plaintiffs' attorney responded that the decision was "horrendous" and that he would distinguish it "in a number of particulars with regard to the facts of our case.... in [our] reply brief." A reply brief was not filed, nor was the case ever distinguished