816 P.2d 502 (1991)
112 N.M. 433
In re Delinquency Proceedings against MISSION INSURANCE COMPANY.
LEVI STRAUSS & COMPANY, Petitioner-Appellee,
v.
NEW MEXICO PROPERTY & CASUALTY INSURANCE GUARANTY ASSOCIATION, Respondent-Appellant.
Nos. 18762, 18793.
Supreme Court of New Mexico.
August 27, 1991.
*503 Felker & Ish, P.A., Randolph B. Felker and Mariana (Mimi) G. Geer, Santa Fe, for respondent-appellant.
Sutin, Thayer & Browne, John A. Bannerman and Alexis H. Johnson, Albuquerque, for petitioner-appellee.

OPINION
FRANCHINI, Justice.
We have granted appellee's motion for rehearing. The opinion filed February 28, 1991 is hereby withdrawn, and the opinion filed this date is substituted therefore. The issue presented in this case is whether a self-insured employer who has a claim against an insolvent insurer may qualify such claim as a "covered claim" within the *504 scope of the New Mexico Property & Casualty Insurance Guaranty Law, NMSA 1978, Sections 59A-43-1 to -18 (Repl.Pamp. 1988 and Cum.Supp. 1991). We find that they do and affirm the district court.
Levi Strauss & Company (Levi Strauss), a self-insured employer as defined in the Workers' Compensation Act, NMSA 1978, Section 52-1-4 (Repl.Pamp. 1991), brought suit against New Mexico Property & Casualty Insurance Guaranty Association (the Guaranty Association) to recover the loss that Levi Strauss incurred when its excess workers' compensation insurer, Mission Insurance Company (Mission), became insolvent.
Under the policies at issue, Mission was to pay claims that exceeded either the specific retention on an individual claim (e.g., in claim year 1984-85 Mission would pay amounts in excess of $100,000 on any individual worker's claim), or all amounts that exceeded Levi Strauss' aggregate retention for a given year (e.g., in claim year 1984-85 Levi Strauss' aggregate retention amount was $2,500,000). The retentions in essence are large deductibles. If and when either the specific retention level was met for a single claim, or when all claims in that year exceeded Levi Strauss' overall retention, Mission's obligation to pay attached. Excess policies are required by the Workers' Compensation Administration, which regulates self-insurance in the workers' compensation area. See N.M. Workers' Compensation Admin. Dep't Reg. 87-1 (July 1987).
The New Mexico Workers' Compensation Act requires that an employer satisfy the director of the Workers' Compensation Administration that the employer is either financially solvent and can bear the costs of claims without resort to insurance coverage, or that the employer has purchased insurance for the purpose of insuring against claims. NMSA 1978, § 52-1-4. This scheme recognizes that some employers have sufficient financial resources to fund workers' compensation benefits.
Levi Strauss filed a petition of review against the Guaranty Association's denial of its claim to recover amounts owed by the insolvent insurer Mission in accordance with NMSA 1978, Section 59A-43-14. The Guaranty Association denied the claim on the basis that Levi Strauss' claim was not a "covered claim" as defined in NMSA 1978, Section 59A-43-4(C). The district court granted Levi Strauss' motion for partial summary judgment and motion to strike. The court found that the policies at issue are workers' compensation policies within the scope of the Guaranty Law and the policies insure Levi Strauss against workers' claims. The court also found that "The policies are comprehended within the definition of `covered claims' provided in Sections 59A-43-1 to -18, NMSA 1978, and no exception from coverage for these policies exists." The trial court then issued a second order granting Levi Strauss' motion to dismiss certain affirmative defenses. The Guaranty Association filed applications for interlocutory appeal from both orders. The appeals were granted and consolidated. The Guaranty Association argues that the policies do not fall within the definition of "covered claims" because they are not "direct insurance policies"; they are in the form of reinsurance; they are indemnity agreements; and they are not true workers' compensation policies.
The Guaranty Association was created for the benefit of claimants or policyholders in the event that the insurance companies became insolvent and unable to pay any outstanding claims. NMSA 1978, § 59A-43-2 (Repl.Pamp. 1988 and Cum. Supp. 1991). The Guaranty Association is made up of all property and casualty insurers doing business in New Mexico and is funded by assessments paid by member insurers. The Guaranty Association is charged with the collection of the assessments as well as the duty of policing the health of insurance companies doing business in New Mexico. See id. It is not the duty of the insured to police payments of premium tax by the insurer. The record does not disclose whether Mission failed to pay premium tax on the insurance policies issued to Levi Strauss. Payment of a premium tax, properly or otherwise, is not a *505 condition precedent to asserting a "covered claim" under Section 59A-43-4(C).
The Guaranty Association's obligations to pay "covered claims" applies to:
all kinds of direct insurance except life, health, annuities, title guaranty, surety (other than fidelity), credit, mortgage guaranty, ocean marine, surplus line and other coverages written by insurers other than authorized insurers or written by Mexican casualty insurers * * * *
NMSA 1978, § 59A-43-3. The relationship at issue in this claim is between Levi Strauss as the insured and Mission as the insurer. Mission's obligation to pay under the policies attached when the specific or aggregate retention was exceeded.
The term "direct insurance" is not defined in the New Mexico Insurance Code. In Zinke-Smith, Inc. v. Florida Insurance Guaranty Association, 304 So.2d 507 (Fla. Dist. Ct. App. 1974), the court defined "direct insurance" as "an insurance contract between the insured and the insurer which has accepted the risk of a designated loss to such insured, which relationship is direct and uninterrupted by the presence of another insurer." Id. at 508. In that case, Zinke sought to recover an amount against the Florida Insurance Guaranty Association on account of the insolvency of Zinke's excess workers' compensation policies. The policies at issue were substantially similar to the Mission policies here. The Florida court recognized that the policies met the definition of "direct insurance." Here we find that Levi Strauss' relationship with Mission was insured to insurer and uninterrupted by the presence of another insurer. We find the policies to be "direct insurance." We therefore approve of and adopt the Florida court's definition of that term.
Appellant contends that because Levi Strauss is a self-insurer under the Workers' Compensation Act, the excess policies should be characterized as reinsurance, and therefore, not within the scope of Section 59A-43-4(C). We do not agree.
First, the policies were never treated as reinsurance by Mission. Mission thought it was to pay premium tax on the policies even if it was done incorrectly. Also, testimony was provided by employees of Mission to the effect that these policies were not reinsurance policies and that Mission was not set up to write reinsurance but, instead, excess workers' compensation insurance for self-insured employers. Even in liquidation, the policies were being treated as direct insurance policies under California law and not reinsurance.
Furthermore, we do not find Levi Strauss operating as a self-insurer to be an "insurer." Robert E. Keeton in his text on insurance has stated:
Risk transference or risk distribution may be accomplished without using insurance. If one entity, such as a corporation or a governmental agency, engages in a sufficient volume of ventures of a given type, the risks of all the ventures in the group can be spread by the enterprise acting on its own * * * Although an entity that handles the risk of tort claims in this manner is sometimes referred to as a "self-insurer," this approach involves no insurance as the term is ordinarily used in regulatory statutes or in other legal contests.
R.E. Keeton and A.I. Widiss, Insurance Law 13-14 (1988). Additionally, the legislature has defined insurer to be: "every person engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts of insurance." NMSA 1978, § 59A-1-8(A). Levi Strauss clearly is not a statutory "insurer" as defined by the legislature. Further, the legislature has defined "insurance" as "a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils * * * *" NMSA 1978, § 59A-1-5. There is no insurance contract between Levi Strauss and its employees. For a contract of insurance to exist, one must assume the risk of another, and the assuming party agrees to pay a sum of money to the other party (or its nominee) at the happening of a stated contingency. See 12 J.A. Appleman, Insurance Law and Practice § 7002 (ed. 1981 & Supp. 1990). Levi Strauss as a self-insurer, did not assume the risk of another. Rather, *506 it retained its own risk. Levi Strauss' relationship to its employees is not that of an insurer/insured. Instead it is as an employer that pays the expenses associated with its employees' work-place accidents.
Finally, operating under a certificate of solvency pursuant to NMSA 1978, Section 52-1-4, cannot be equated with an insurance contract or policy. See 12 J.A. Appleman, Insurance Law and Practice § 7002 (ed. 1981 & Supp. 1990). The certificate is simply a way of proving to the state that an employer can satisfy its obligation under the workers' compensation laws.
NMSA 1978, Section 59A-7-11(A), defines reinsurance, and states in relevant part: "An insurer may reinsure all or any part of a particular risk or of a particular class of risks in another insurer * * * *" Because Levi Strauss is not an insurer, its policies with Mission cannot be considered "reinsurance." See generally Sierra Life Ins. Co. v. First Nat'l Life Ins. Co., 85 N.M. 409, 512 P.2d 1245 (1973) (definition of reinsurance).
A finding that identical excess insurance policies were not reinsurance policies was made by the Iowa Supreme Court in Iowa Contractors Workers' Compensation Group v. Iowa Insurance Guaranty Association, 437 N.W.2d 909 (Iowa 1989). The Iowa court concluded that: "Mission did not insure another insurer  the hallmark of a reinsurance contract." Id. at 915 (Citing L.E. Davids, Dictionary of Insurance 218 (1977)). In view of the foregoing, we do not find the policies at issue to be reinsurance.
The Guaranty Association also argues that the subject policies are indemnity policies, which are necessarily excluded from the Guaranty Law. The Guaranty Association states that the underlying claims for which the indemnitee seeks reimbursement necessarily have already been paid and cites Section 59A-43-4(C) of the Guaranty Law in support:
Covered claim shall not include any amount of an unpaid claim paid to an insured or liability claimant of an insolvent insurer by any person, including but not limited to an agent or broker whether or not an assignment is taken by such person, agent or broker.
The Guaranty Association misconstrues this language in its attempt to characterize the "claim" for purposes of the Guaranty Law, to be the paid workers' compensation benefits. The Guaranty Association implies that because Levi Strauss has paid workers' compensation benefits to its employees, it therefore has paid the "claim" for the purpose of the Guaranty Law. The fact that Levi Strauss had to pay the workers' compensation claims to the amount of the retention first, before Mission's obligation to reimburse them attached, has no bearing on our analysis. The "insured" Levi Strauss' claim and the payments it made in excess of the retention are the losses it seeks to recover.
Finally, the Guaranty Association argues that the unlimited coverage of the Guaranty Law was meant to protect injured workers and not self-insured employers, and, therefore, Levi Strauss' excess liability policies are not true workers' compensation policies. Although it is true that the unlimited coverage of the Guaranty Law was meant to protect injured workers, it does not follow that Levi Strauss' excess policies fall outside the coverage of that law. We find that excess workers' compensation policies are not excepted from coverage under NMSA 1978, Section 59A-43-4(C), nor are they defined as beyond the scope of the Guaranty Act in Sections 59A-43-3. The Guaranty Law as drafted clearly applies to Levi Strauss' claim as an excess workers' compensation claim.
In view of the foregoing, we find that Levi Strauss' policies are covered claims subject to exceptions as set out in Section 59A-43-4(C). The policies are direct policies of excess insurance and Levi Strauss is the insured under the policies. Accordingly, we uphold both the district court's summary judgment in favor of Levi Strauss, and the second related order striking the affirmative defenses.
IT IS SO ORDERED.
*507 SOSA, C.J., and RANSOM and MONTGOMERY, JJ., concur.
BACA, J., dissents and files opinion.
BACA, Justice (dissenting).
I respectfully dissent from the majority's opinion. Because Levi Strauss is a self-insurer under the Workers' Compensation Act, I am convinced that the subject policies constitute policies for "reinsurance." Reinsurance is "[a] contract that one insurer makes with another to protect the latter from a risk already assumed." Black's Law Dictionary 1157 (5th ed. 1979).
While the policies of reinsurance are considered "direct insurance" as between the self-insurer Levi Strauss and the reinsurer Mission, the New Mexico Guaranty Act was not intended to apply to reinsurance.[1] Because a claim against a reinsurer necessarily concerns an amount due the insurer, the insolvency of a reinsurer could not be the basis of the "covered claim." See Zinke-Smith, Inc. v. Florida Ins. Guar. Assoc., Inc., 304 So.2d 507 (Fla. Dist. Ct. App. 1974). Nor is it relevant that Levi Strauss is not an insurance company in the business of supplying insurance to others. A policy in the nature of reinsurance does not exist only between two insurance companies. Provided one party is an insurer,[2] as is the case here, a policy that indemnifies with respect to the assumed risk represents reinsurance. See Friend Bros. v. Seaboard Sur. Co., 316 Mass. 639, 56 N.E.2d 6 (1944) (a contract of insurance between a self-insured employer and an insurer of a portion of that employer's assumed risk represents reinsurance); Loblaw, Inc. v. Employer's Liab. Assurance Corp., 85 A.D.2d 880, 446 N.Y.S.2d 743 (1981) (same); McQueen v. Great Markwestern Packing Co., 402 Mich. 321, 262 N.W.2d 820 (1978) (same).
The Guaranty Association argues Levi Strauss is a statutory insurer. I agree. To determine whether a contract of insurance exists, the court should:
[L]ook through the form of the transaction to determine whether the relationship of insurer and insured exists. Whether the contract is one of insurance must be determined from its purpose, effect, content, terminology and conduct of the parties, and not from its designation therein, since a contract which is fundamentally one of insurance cannot be altered by the use or absence of words in the contract itself. The Court must look also to the intention of the parties in making this determination.
12 J.A. Appleman, Insurance Law and Practice § 7001, at 2-3 (1981). Because Levi Strauss elected to become a self-insurer and thereby assumed direct and primary liability for its injured worker, see NMSA 1978, Section 52-1-4, its relationship to the employees is closer to that of an insurer than that of a workers' compensation claimant. Moreover, like an insurance company, Levi Strauss uses an insurance adjuster to examine the claims. See Loblaw, Inc., 85 A.D.2d at 881, 446 N.Y.S.2d at 745 (where self-insured employer used a licensed insurance adjusting company, its status was more akin to an insurance company than to that of an individual). Within the statutory scheme of the Workers' Compensation Act, Levi Strauss is a statutory insurer. Levi Strauss's policies insured a portion of its direct and primary risk, thus the policies represent reinsurance.
Levi Strauss cites Zinke-Smith and Iowa Contractors Workers' Compensation Group v. Iowa Insurance Guaranty, 437 N.W.2d 909 (Iowa 1989), as support for its argument that these policies are not reinsurance, but rather represent direct excess insurance policies with a large deductible of $2,500,000.00. However, I find the two cases are distinguishable on this point.
The relevant Iowa and Florida Guaranty Acts differ significantly from the New *508 Mexico Guaranty Act. Compare NMSA 1978, §§ 59A-43-1 with Iowa Code Ann. § 515B.1 (West 1989) and Fla. Stat. Ann. § 631.50 (West 1974). In the instant case, Levi Strauss's insurance contract represents an indemnity agreement. As the indemnitee, Levi Strauss is seeking reimbursement for claims that have already been paid. The New Mexico Guaranty Act specifically excludes indemnity agreements in Section 59A-43-4(C) as follows: "covered claims shall not include any amount of an unpaid claim paid to an insured or liability claimant of an insolvent insurer by any person, including but not limited to an agent or broker whether or not an assignment is taken by such person, agent or broker." In contrast, neither the Florida Guaranty Act nor the Iowa Guaranty Act upon which the Zinke-Smith and Iowa Contractors cases are based include a similar provision.[3]
Furthermore, in characterizing the policy as direct excess insurance, the court in Iowa Contractors found it significant that the insurance company, Mission,[4]paid premium taxes. As does our statute, the Iowa Code exempted insurance companies from paying such tax on reinsurance premiums, see Iowa Code Ann. Section 515.24 (West 1989); thus, the Iowa court concluded that Mission believed the policy to be direct excess insurance. 437 N.W.2d at 915. In the instant case, significantly, Mission paid no taxes or assessments on these particular Levi Strauss's insurance policies.
Accordingly, I would reverse both the trial court's summary judgment in favor of Levi Strauss and the second related order striking the affirmative defenses. I am persuaded that these policies are in the nature of reinsurance, and therefore, as a matter of law the Guaranty Association is not liable on these policies.
NOTES
[1] Reinsurance is specifically excluded from a "covered claim" as defined in Section 59A-43-4(C): "`Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise."
[2] Although the Insurance Code contains a definition of "insurer," see NMSA 1978, 59A-1-8, that definition is inapplicable for the purposes of defining reinsurance.
[3] Moreover, in Iowa Contractors the court found that, because the Iowa Guaranty Act made specific reference to a self-insured entity, by implication the Act applied to self-insured entities. That statutory language in the Iowa Guaranty Act does not appear in the New Mexico Guaranty Act.

The express language of at least one of the policies at issue here bolsters our conclusion. Unlike the policies at issue in the cited cases, one of the policies at issue here specifically refers to its reinsurance limit.
[4] The same California based Mission Insurance Company is the insolvent insurance company in the instant case and in Iowa Contractors.