903 P.2d 1390

Michael Anthony CORDOVA,
Plaintiff–Appellant,

v.

Frederick WOLFEL, Jr., David Abeyta,
James Abeyta, Priscilla Abeyta, and Na-
tional Car Rentals Systems, Inc., Defen-
dants–Appellees.

No. 21245.

Supreme Court of New Mexico.

Sept. 20, 1995.

Chris Lucero, Jr., Albuquerque, for Appellant.

Civerolo, Wolf, Gralow & Hill, P.A., Ellen M. Kelly, Albuquerque, for Appellees.

## OPINION

MINZNER, Justice.

Cordova appeals from a decision granting summary judgment in favor of National Car Rentals Systems (National). This case raises the issue of whether the Mandatory Financial Responsibility Act (the MFRA), NMSA 1978, §§ 66–5–201 to –239 (Repl.Pamp.1994), imposes liability upon a self-insured rental car company for the negligence of an unauthorized driver, despite a contrary rental contract provision. We conclude that the MFRA does not impose such liability, and we affirm summary judgment.

### I.  FACTS

On January 26, 1990, Priscilla Abeyta rented a car from National at the Albuquerque Airport. Her purpose was to drive her son David and his two friends to Reno, Nevada. At the time of renting, she intended to drive the vehicle exclusively herself. There is a factual dispute between the parties about what rental documents Abeyta read and consented to at the time that she entered into the lease. It is clear, however, that Abeyta signed a standard National form wherein she acknowledged that only she had an "additional authorized driver may drive vehicle." A space for the designation of an additional authorized driver appeared next to Abeyta's signature, and that space was blank. Abeyta declined to purchase optional personal accident insurance.

Shortly after picking up the vehicle, Abeyta became ill, and she decided not to make the trip. She gave permission to her son David to drive. There appears to be a factual dispute about whether she also gave David's friends Wolfel and Cordova permis-sion to drive. After the three men started on their trip, they began to drink, and Wolfel took over the driving. There is a factual dispute about whether Wolfel had had anything to drink and whether he was intoxicated at the time of the accident, which occurred on an interstate highway in Arizona.[1] The accident resulted, at least in part, from Wolfel's negligence, and there were no other vehicles involved.

Cordova claims to have sustained injuries in the amount of $650,000. This figure includes medical expenses exceeding $69,000, lost wages, and permanent loss of the sense of smell. Cordova brought suit against Wolfel, National, Mr. and Mrs. Abeyta, their son David, and Travelers Insurance Company, the Abeytas' personal liability insurer. Cordova has settled his claims against the Abeytas and Wolfel. The trial court granted summary judgment in favor of Travelers after it determined that the insurance contract between Travelers and the Abeytas did not extend coverage to the rental car. National is the sole remaining defendant.

### II.  DISCUSSION

#### A.  Summary Judgment

Along with its motion for summary judgment, National submitted the car rental agreement wherein Abeyta acknowledged that she was the only authorized driver of the vehicle. National asserted that because the agreement provided liability coverage only to authorized drivers, National had no obligation to indemnify Wolfel for liability resulting from his negligent operation of the vehicle. National maintains that as the self-insured owner of the rental car, it is not an insurer, and there was no insurance contract between it and Abeyta. National further contends that the MFRA specifically exempts self-insurers from its provisions.

Cordova argues that National's "Certificate of Self–Insurance [issued by the State Superintendent of Insurance] provides liabili-

---

1. We assume that New Mexico's substantive law applies to this appeal because neither party as-   serts otherwise.

ty ... coverage on [the] vehicle driven by Frederick Wolfel." Cordova does not dispute National's contention that Wolfel was not an authorized driver. Rather, Cordova argues that Wolfel was a permissive driver because he operated the vehicle with Abeyta's express or implied permission. *See United Servs. Auto. Ass'n v. National Farmers Union Property & Casualty,* 119 N.M. 397, 891 P.2d 538 (1995). This contention rests upon the premise that National, as a self-insurer, provided insurance coverage under which Abeyta was the "named insured." Cordova asserts that because the MFRA mandates that liability coverage must extend to persons using the vehicle with the express or implied permission of the named insured, coverage extends to Wolfel by operation of law. *See id.;* § 66–5–221(A)(2).

Cordova argues on appeal that the trial court erred when it determined that, as a matter of law, National is not liable for Wolfel's negligence. We agree with the trial court's interpretation of the rental agreement and its resolution of the purely legal issues presented by this case. Resolving all disputed facts in favor of Cordova, we conclude that National is entitled to judgment, and we affirm. *See Tapia v. Springer Transfer Co.,* 106 N.M. 461, 462–63, 744 P.2d 1264, 1265–66 (Ct.App.), *cert. quashed,* 106 N.M. 405, 744 P.2d 180 (1987).

*B. Self–Insurance*

■ Most authorities agree that self-insurance is not insurance. Insurance is a contract whereby for consideration one party agrees to indemnify or guarantee another party against specified risks. *See New Mexico Life Ins. Guar. Ass'n v. Moore,* 93 N.M. 47, 50, 596 P.2d 260, 263 (1979); NMSA 1978, § 59A–1–5 (Repl.Pamp.1992). In contrast, self-insurance is a process of risk retention whereby an entity "set[s] aside assets to meet foreseeable future losses." Robert E. Keeton & Alan I. Widiss, *Insurance Law: A Guide to Fundamental Principles, Legal Doctrines and Commercial Practices* § 1.3, at 14 (1988); *see also Levi Strauss & Co. v. New Mexico Property & Casualty Ins. Guar.*

*Ass'n (In re Mission Ins. Co.),* 112 N.M. 433, 437, 816 P.2d 502, 506 (1991) (holding that a certificate of self-insurance "cannot be equated with an insurance contract or policy"). A self-insurer protects itself from liability; it does not assume the risk of another. *See Levi Strauss & Co.,* 112 N.M. at 436–37, 816 P.2d at 505–06; *Consolidated Enters., Inc. v. Schwindt,* 172 Ariz. 35, 833 P.2d 706, 709 (1992) (en banc). We note that self-insurance and insurance serve similar purposes and that insurance principles may sometimes apply to self-insurance by way of analogy. Nonetheless, we reject as inaccurate Cordova's theory that self-insurance is a sub-set of insurance.

■ The relationship between National and its lessees is one of bailment, and there generally is no common law basis for imposing upon a bailor liability for a bailee's negligent operation of a bailed vehicle. *See Stover v. Critchfield,* 510 N.W.2d 681, 683–84 (S.D.1994). The legislatures of a few states have altered this common law rule through legislation. *See* Ariz.Rev.Stat.Ann. § 28–324 (1994 Cum.Supp.) (requiring owner of rental vehicles to obtain public liability insurance protecting passengers and third parties against negligence of renter; however, owner not liable for damages beyond limits of insurance policy); Conn.Gen Stat. § 14–154a (1995) (owner of leased vehicle liable for damage caused by operation of leased vehicle to same extent as operator would be held liable if operator were owner); *cf.* Neb.Rev. Stat. § 25–21,239 (1994 Cum.Supp.) (making owner of leased truck jointly and severally liable with lessee for lessee's negligence). Moreover, the court of at least one state has determined that, as a matter of public policy, a vehicle lessor will be liable for the negligence of a lessee, irrespective of contrary contractual language. *See Motor Vehicle Accident Indem. Corp. v. Continental Nat'l Am. Group Co.,* 35 N.Y.2d 260, 360 N.Y.S.2d 859, 861–63, 319 N.E.2d 182, 184–85 (1974). The New Mexico legislature has not enacted legislation that would make vehicle lessors generally liable for injuries that result when lessees negligently use their vehicles, and we

decline to take that step in the absence of legislative action. We conclude that a vehicle lessor is liable for the negligence of a lessee or a lessee's permittee only to the extent that a statute, administrative regulation, or agreement of the parties imposes such liability.

■ Cordova's arguments on appeal largely proceed from the premise that a self-insured entity such as National is subject to the requirements of the MFRA. However, the MFRA itself belies this contention. In unambiguous language, the MFRA exempts from its provisions "motor vehicle[s] approved as self-insured by the superintendent of insurance." Section 66–5–207(E). We recognize that there may be situations where it is appropriate to apply the provisions of the MFRA to self-insurers by analogy. Nonetheless, we cannot ignore the statute's plain language, see V.P. Clarence Co. v. Colgate, 115 N.M. 471, 473, 853 P.2d 722, 724 (1993), and a literal interpretation of Section 66–5–207(E) does not lead to an absurd result. Cf. State v. Gutierrez, 115 N.M. 551, 552, 854 P.2d 878, 879 (Ct.App.) (holding that where literal language of statute leads to absurd result, court may construe statute to avoid such result), cert. denied, 115 N.M. 545, 854 P.2d 872 (1993).

## C. National's Obligations Under Self–Insurance Regulations

■ Notwithstanding the MFRA's express exemption of self-insured entities, Cordova argues that the MFRA applies to self-insurers just as it applies to other members of the motoring public. In support of this contention, Cordova cites to N.M.Ins.Dep't Reg. 2–3, a regulation promulgated by the State Superintendent of Insurance pursuant to statutory mandate. See § 66–5–207.1(A). That regulation specifies the requirements for obtaining a certificate of self-insurance, and one of its provisions states that car rental agreements must "provide that the

lessor shall be primarily liable and [the] lessee shall be secondarily liable for responsibilities under the [Mandatory Financial Responsibility] Act."[2] N.M.Ins.Dep't Reg. 2–3, at 10. We cannot agree with Cordova's theory of the significance of this provision. To the extent that Cordova interprets this language as bringing self-insured entities within the purview of the MFRA, that interpretation directly conflicts with the statutory language that explicitly exempts self-insured vehicles from the MFRA. See § 66–5–207(E). The Superintendent of Insurance may not promulgate a regulation that conflicts with a statute. See Peck v. University Residence Comm., 248 Kan. 450, 807 P.2d 652, 660 (1991).

Nor do we agree with Cordova that exempting self-insured entities from the MFRA is inconsistent with the public policies embodied in the MFRA. The stated purpose of the MFRA is to ensure that vehicle owners and operators have the ability "to respond in damages to accidents arising out of the use and operation of a motor vehicle." Section 66–5–201.1. One way to demonstrate the ability to respond in damages is to purchase an insurance policy that conforms to the criteria specified in the MFRA. If, on the other hand, an entity can demonstrate that it has sufficient financial reserves such that it will be able to adequately respond in damages without purchasing insurance, then the Superintendent of Insurance may issue a certificate of self-insurance. See N.M.Ins.Dep't Reg. 2–3, at 4–10. In our view, the legislature intended for self-insurance and the purchase of insurance to serve as two alternative means of ensuring that owners of vehicles are able to respond in damages. Cf. Levi Strauss & Co., 112 N.M. at 436–37, 816 P.2d at 505–06 (noting that self-insurance under the workers' compensation law is "a way of proving to the state that an employer can satisfy its obligation under the workers' compensation laws").

---

**2.** The record indicates that National's rental agreement is apparently in compliance with this regulatory requirement. The rental agreement states that National's "self-insurance arrangement protects the Authorized Driver on a pri-

mary basis in respect to other insurance, for bodily injury or death of another and for property damage...." However, the terms of that same rental agreement provide that the liability protection extends only to authorized drivers.

### D. *The Stipulated Agreement*

As his second ground for appeal, Cordova asserts that the trial court erred by refusing to approve the first stipulated agreement between him and Wolfel. Cordova released his claims against Wolfel, and in return Wolfel assigned to Cordova any claims that Wolfel might have against National. The first stipulated agreement between Wolfel and Cordova specified that Wolfel's comparative share of fault was 60% of the $650,000 damages that Cordova was alleged to have suffered. In addition, the first agreement included a number of factual findings regarding the accident. The district court refused to approve the stipulated agreement, stating that it would "not make any Findings of Fact in a stipulated judgment." The court did approve a second stipulated judgment wherein Wolfel simply stipulated that he was liable to Cordova in the amount of $390,000. In view of our resolution of the other issues presented on appeal, we need not address this issue.

### III. *CONCLUSION*

We conclude that the trial court correctly determined that National is exempt from the MFRA, and that, in the absence of a contractual agreement, National is not vicariously liable for Wolfel's negligence. Summary judgment in favor of National is affirmed.

IT IS SO ORDERED.

BACA, C.J., and FROST, J., concur.