**Phillip MAYA, Plaintiff,**

v.

**GENERAL MOTORS CORP., Burt Chevrolet, Inc., and U.S. West Communications, Defendants.**

**Civil No. 96–347 BB/WWD.**

United States District Court,
D. New Mexico.

Dec. 5, 1996.

---

1246

E. Justin Pennington, Pennington Law Offices, Albuquerque, NM, for Plaintiff.

James P. Lyle, Butt, Thornton & Baehr, Albuquerque, NM, for Defendant General Motors Corp.

David M. Prichard, Ball & Weed, P.C., San Antonio, TX, for Defendants General Motors Corp. and Burt Chevrolet, Inc.

Norman F. Weiss, Simone, Roberts & Weiss, Albuquerque, NM, for Defendant U.S. West Communications.

## MEMORANDUM OPINION

BLACK, District Judge.

This Opinion addresses two pending motions. The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that (1) Defendant U.S. West's September 5, 1996 motion to dismiss for failure to state a claim and for sanctions (Doc. 15) should be GRANTED IN PART and DENIED IN PART, and (2) Plaintiff's October 16, 1996 motion to amend complaint (Doc. 26) should be GRANTED.

## I. Facts and Procedural History

Plaintiff Phillip Maya makes the following allegations in his complaint:

On March 24, 1993, Plaintiff was a passenger in a 1991 Suburban motor vehicle traveling south on New Mexico Highway 44 near San Isidro, New Mexico. While the Suburban was traveling at a high rate of speed, its rear axle assembly broke or disassembled, causing the driver to lose control of the vehicle. The Suburban crashed into a ditch, and as a result of the accident, Plaintiff suffered physical injury requiring extensive medical treatment, pain and suffering, loss of enjoyment of life, lost wages, lost career opportunities, and lost wage-earning capacity. Defendant General Motors Corporation ("General Motors") designed and manufactured the Suburban involved in the accident. General Motors also distributed the Suburban to Defendant Burt Chevrolet, Incorporated ("Burt Chevrolet"), which sold or leased the Suburban to Defendant U.S. West Communications ("U.S. West").

On March 13, 1996, Plaintiff filed suit against Defendants in federal court on the basis of diversity jurisdiction. Plaintiff asserts causes of action against General Motors based on negligence, strict products liability, breach of warranty, and res ipsa loquitur. Plaintiff asserts causes of action against Burt Chevrolet based on strict products liability, breach of warranty, and res ipsa loquitur. Finally, Plaintiff asserts a cause of action against U.S. West based on the New Mexico Mandatory Financial Responsibility Act ("MFRA"). N.M.Stat.Ann. §§ 66–5–201 to 66–5–239 (Michie 1994). After Defendants answered Plaintiff's complaint, U.S. West filed a motion to dismiss the complaint for failure to state a claim and for sanctions, on September 5, 1996. On October 16, 1996, Plaintiff filed a motion to amend his complaint to add certain negligence claims against U.S. West. These motions are now before the Court.

## II. Analysis

When, as here, a federal court sits in diversity, it must apply the substantive law of the state in which it sits.[1] *Tucker v. R.A. Hanson Co.,* 956 F.2d 215, 217 (10th Cir. 1992) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)). The New Mexico Supreme Court's pronouncements of state law are binding on this Court while sitting in diversity. *Perlmutter v. United States Gypsum Co.,* 4 F.3d 864, 869 n. 2 (10th Cir.1993) (*citing Menne v. Celotex Corp.,* 861 F.2d 1453, 1464 n. 15 (10th Cir.1988)). Where the New Mexico Supreme Court has not addressed an issue, this Court must anticipate how that court would rule and hold accordingly. *Adams–Arapahoe Sch. Dist. No. 28–J v. GAF Corp.,* 959 F.2d 868, 871 (10th Cir. 1992). In so predicting, the Court will consider "state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir. 1988). The Court will consider the parties' motions in light of these standards.

---

**1.** The Federal Rules of Civil Procedure generally govern procedural issues in diversity cases. *See* 19 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 4508 (1996) (valid applicable Federal Rules of Civil Procedure are controlling in diversity cases).

### A. U.S. West's Motion to Dismiss and for Sanctions

The Court may not grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) unless "it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1496 (10th Cir.1995). The Court must "accept all well-pleaded allegations as true," *id.*, and "indulge all reasonable inferences in favor of the plaintiff[ ]." *Weatherhead v. Globe Int'l, Inc.*, 832 F.2d 1226, 1228 (10th Cir.1987).

■ In support of its motion to dismiss, U.S. West observes that Plaintiff bases his claims against U.S. West exclusively on the MFRA. Specifically, Plaintiff alleges that according to this statutory enactment, U.S. West is vicariously liable for the injuries Plaintiff suffered because U.S. West owned the vehicle that caused the injuries.[2] U.S. West counters that the MFRA does not render a vehicle owner vicariously liable for any injuries his or her vehicle causes while being driven by a third party. The operative provisions of the MFRA state:

> [n]o owner shall permit the operation of an uninsured motor vehicle ... upon the streets or highways of New Mexico unless the vehicle is specifically exempted from the provisions of the [MFRA].... No person shall drive an uninsured motor vehicle ... upon the streets or highways of New Mexico unless the vehicle is specifically exempted from the provisions of the [MFRA].... Any person who violates the provisions of this section is guilty of a misdemeanor.

N.M.Stat.Ann. § 66–5–205. The Act also indicates that

> [t]he purpose of the [MFRA] is to require and encourage residents of the state of New Mexico who own and operate motor vehicles upon the highways of the state to have the ability to respond in damages to

accidents arising out of the use and operation of a motor vehicle.

N.M.Stat.Ann. § 66–5–201.1.

According to Plaintiff, "[t]he plain language of the [MFRA] implies strict liability for damages arising out of the use and ownership of a vehicle." (Pl.'s Resp.Def.'s Mot.Dismiss at 3.) The Court disagrees. Rather, the Court finds that the plain language of the MFRA requires anyone who owns or operates a motor vehicle within New Mexico to obtain liability insurance for that vehicle before operating or permitting the operation of it. *See* N.M.Stat.Ann. § 66–5–205. This interpretation is consistent with the MFRA's purpose of ensuring that New Mexico residents who own or operate motor vehicles on New Mexico roadways *"have the ability* to respond in damages to [motor vehicle] accidents." N.M.Stat.Ann. § 66–5–201.1 (emphasis added). The Court notes that Plaintiff's interpretation of the Act, rendering owners vicariously liable, would more accurately correspond with the purpose of ensuring that New Mexico residents who own or operate motor vehicles *actually respond* in damages to motor vehicle accidents.

■ Although the New Mexico Supreme Court has not yet addressed the issue, this Court anticipates that if it were to do so, it would conclude that the MFRA does not render vehicle owners vicariously liable for injuries their vehicles cause while being driven by another. *See Adams–Arapahoe Sch. Dist. No. 28–J*, 959 F.2d at 871 (federal court must anticipate state supreme court ruling on substantive law in diversity cases). In addition to the plain language of the statute, the Court relies on New Mexico common law, according to which "the owner of an automobile is not liable for the negligence of a person using it with his permission." *Bryant v. Gilmer*, 97 N.M. 358, 360, 639 P.2d 1212, 1214 (Ct.App.1982); *see also Cordova v. Wolfel*, 120 N.M. 557, 559, 903 P.2d 1390, 1392 (1995) ("[T]here is generally no common law basis for imposing upon a bailor liability for a bailee's negligent operation of a bailed vehicle."); *Toscano v. Spriggs*, 343 Md. 320, 681

---

**2.** Plaintiff does not appear to argue that U.S. West violated the MFRA by failing to insure the

Suburban involved in the accident.

A.2d 61, 64 (1996) ("Mere ownership of a car does not impose liability for injuries caused in the driving of it."); *compare Oliver v. Davis,* 679 So.2d 462, 467 (La.Ct.App.1996) ("Florida imposes vicarious liability upon the owner of a motor vehicle who voluntarily entrusts it to another ... [u]nder the common law 'dangerous instrumentality' doctrine."). This federal Court declines to deviate from New Mexico common law based on a strained reading of the MFRA. *See Gonzalez v. Whitaker,* 97 N.M. 710, 714, 643 P.2d 274, 278 (Ct.App.1982) ("The common law is only abrogated or repealed by statute when the statute directly and irreconcilably is opposed to the common law.").

The Kansas Supreme Court's reasoning in *West v. Collins,* 251 Kan. 657, 840 P.2d 435 (1992), further supports the Court's conclusion that the MFRA does not impose vicarious liability on vehicle owners. In *West,* the plaintiff "argue[d] that the Kansas Automobile Injury Reparations Act ('KAIRA') ... which requires vehicle liability insurance, implies that the car owner is liable or creates a vicarious liability." *Id.* 840 P.2d at 438. The operative provisions of the KAIRA state that

> [e]very owner shall provide motor vehicle liability insurance coverage ... for every motor vehicle owned by such person.... An owner of an uninsured motor vehicle shall not permit the operation thereof upon a highway or upon property open to use by the public.... No person shall knowingly drive an uninsured motor vehicle upon a highway or upon property open to use by the public.... Any person violating any provision of this section shall be guilty of a class B misdemeanor.

Kan.Stat.Ann. § 40–3104 (Supp.1995). The purpose of the KAIRA "is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles." Kan.Stat.Ann. § 40–3102.

In light of these provisions, the *West* court determined that "vicarious liability will not be imputed to a vehicle owner based solely on permissive use by a third party." 840 P.2d at 443. The differences between the operative provisions of Kansas' KAIRA and New Mexico's MFRA are negligible. *Com-pare* Kan.Stat.Ann. § 40–3104 *with* N.M.Stat.Ann. § 66–6–205. Furthermore, the KAIRA's stated purpose could be more easily read to impose vicarious liability on vehicle owners than could the MFRA's stated purpose. *Compare* Kan.Stat.Ann. § 40–3102 (purpose of KAIRA is to "provide a means of compensating" motor vehicle accident victims) *with* N.M.Stat.Ann. § 66–2–201.1 (purpose of MFRA is to ensure that owners and drivers "have the ability to respond in damages" to motor vehicle accident victims). Thus, the *West* court's determination that the KAIRA does not impose vicarious liability on vehicle owners is persuasive in the present matter. *See also Ulrigg v. Jones,* 274 Mont. 215, 907 P.2d 937, 940 (1995) (Montana Motor Vehicle Safety–Responsibility Act "does not impose vicarious liability on a third party. Rather, the Act requires the owner of a motor vehicle to continuously provide liability insurance coverage for operation of the vehicle by the owner and any permissive user.").

For all of the above reasons, the Court concludes that the MFRA does not render a vehicle owner vicariously liable for injuries caused by the owner's vehicle when driven by another. *Cf. also Cordova,* 120 N.M. at 559–60, 903 P.2d at 1392–93 ("The New Mexico legislature has not enacted legislation that would make vehicle lessors generally liable for injuries that result when lessees negligently use their vehicles, and we decline to take that step in the absence of legislative action."). The Court will therefore dismiss Plaintiff's claims against U.S. West based on the MFRA.

■ The Court must next consider U.S. West's argument that the Court should impose sanctions against Plaintiff under Federal Rule of Civil Procedure 11 because Plaintiff's claims against U.S. West are frivolous. Rule 11 states in relevant part that

> [b]y presenting to the court ... a pleading ... an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the

extension, modification, or reversal of existing law or the establishment of new law. Fed.R.Civ.P. 11(b). According to the Tenth Circuit,

> [a]s with other types of sanctions, the award of Rule 11 sanctions involves two steps. The district court must first find that a pleading violates Rule 11. This typically involves subsidiary findings, such as the current state of the law or the parties' and attorneys' behavior and motives within the context of the entire litigation. . . . The second step is for the district court to impose an appropriate sanction.

*Adamson v. Bowen,* 855 F.2d 668, 672 (10th Cir.1988).

Regarding the first step of the *Adamson* test, U.S. West asserts that Plaintiff's MFRA claims against it violate Rule 11 because the claims are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11(b)(2). The Tenth Circuit has discussed this aspect of Rule 11 at some length, stating that

> [p]rior to determining whether a pleading which requires a change in existing law is warranted, it would be logical for a district court in this circuit to carefully examine the controlling law . . . in terms of its pervasiveness . . . its recency, its clarity, and its specific relevance to the issues confronting the court, among other things. Then the court would do well to determine whether the proponent of the position has articulated a reasoned and principled basis for the proposed extension, modification, or reversal of the controlling law.

*Hughes v. City of Fort Collins,* 926 F.2d 986, 990 (10th Cir.1991). Also, courts "must . . . bear in mind that the rule is not to chill . . . à lawyer's creativity in introducing novel theories of recovery." *In Re Kunstler,* 914 F.2d 505, 524 (4th Cir.1990), *cert. denied sub nom. Kunstler v. Britt,* 499 U.S. 969, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991); *see also CJC Holdings, Inc. v. Wright & Lato, Inc.,* 989 F.2d 791, 794 (5th Cir.1993) ("[M]isapplication of Rule 11 can chill counsel's enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories.").

In its analysis of U.S. West's motion to dismiss, the Court has already "carefully examine[d] the controlling law." *Hughes,* 926 F.2d at 990. The Court located no New Mexico court decision considering the precise issue Plaintiff raised, *i.e.,* whether the MFRA imposes vicarious liability on vehicle owners. Furthermore, while the Court relied in part on the decisions of courts that have declined to impose such vicarious liability, the Court notes that in at least one state the courts do impose such liability. *Oliver,* 679 So.2d at 467 (discussing Florida's dangerous instrumentality doctrine). Also, several state legislatures have expressly imposed such liability by statute. *See, e.g.,* N.Y.Veh. & Traf. Law § 388 (McKinney 1986). Thus, the Court concludes that Plaintiff's argument in favor of imposing such liability was "warranted by . . . a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," Fed.R.Civ.P. 11(b)(2), and does not violate Rule 11. The Court will therefore deny U.S. West's motion for Rule 11 sanctions against Plaintiff.

## B. Plaintiff's Motion to Amend Complaint

 Plaintiff moves to file an amended complaint under Federal Rule of Civil Procedure 15, according to which "leave [to amend pleadings] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "The decision to [allow] amend[ment of] the pleadings . . . lies within the sound discretion of the district court." *Clayton v. Tansy,* 26 F.3d 980, 982 (10th Cir.1993). The Court may disallow amendment for various reasons including "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, [and] futility of amendment." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.1993). However, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

U.S. West argues that the Court should deny Plaintiff leave to amend his complaint to add negligence claims against U.S. West, because (1) Plaintiff asserts these claims in bad faith and (2) Plaintiff's assertion of these claims would be futile. The only support U.S. West provides for its bad faith argument is the affidavit of U.S. West's counsel, Norman F. Weiss, in which Mr. Weiss testifies that Plaintiff's counsel told Mr. Weiss he did not think Plaintiff had a basis for asserting negligence claims against U.S. West. As Plaintiff observes, Mr. Weiss' insertion of his own testimony into the case raises difficult issues of admissibility and credibility. Fortunately, however, the Court need not consider these issues because Mr. Weiss' testimony, even if accepted, would not demonstrate that Plaintiff acted in bad faith in asserting negligence claims against U.S. West. An attorney's off-the-record statements to opposing counsel during the early stages of litigation cannot bind his client throughout the course of that litigation. After such statements are made, the attorney may become aware of new law or new facts that require him, in the zealous, good faith representation of his client, to change his position. Thus, the Weiss affidavit alone does not demonstrate that Plaintiff seeks to assert his negligence claims in bad faith.

U.S. West next argues that Plaintiff's proposed amendments adding vicarious liability claims against U.S. West would be futile.[3] At issue are the following allegations in Plaintiff's proposed amended complaint:

[i]n the alternative, the driver of the 1991 Suburban was an agent, employee, or representative of USWEST, had been entrusted by USWEST to operate said vehicle on its behalf, and at the time of the motor vehicle accident described herein, was operating said vehicle pursuant to the business interests of Defendant USWEST. . . . Upon information and belief, said driver negligently failed to maintain control of the 1991 Suburban resulting in the herein-described motor vehicle accident.

(Pl.'s Proposed Am.Compl. ¶¶ 29–30.)

Initially, the Court notes that "amendments should be denied on [the basis of futility] only if they assert clearly frivolous claims or defenses." *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 690, 695 (8th Cir.1981). According to the New Mexico Supreme Court, to impose vicarious liability on a vehicle owner "[u]nder an agency or master servant theory, the automobile must have been used with the consent and knowledge of the master and the accident must have occurred within the scope of the servant's employment, in the facilitation of the master's business." *Bryant,* 97 N.M. at 360, 639 P.2d at 1214.

The Court finds that Plaintiff's proposed amended complaint adequately states a claim of vicarious liability under an agency theory. Plaintiff alleges that at the time he was operating the vehicle, the Suburban's driver was U.S. West's servant and was acting with U.S. West's knowledge and consent and to facilitate U.S. West's business. (*See* Pl.'s Proposed Am.Compl. ¶¶ 29); *Bryant,* 97 N.M. at 360, 639 P.2d at 1214. U.S. West contends that it is not vicariously liable because the Suburban's driver was an independent contractor. However, this contention is supported only by Mr. Weiss' affidavit, and raises both factual and legal issues that cannot be resolved at this stage of the proceedings. The contention certainly does not establish that Plaintiff's proposed "amendments . . . assert clearly frivolous claims or defenses." *Buder,* 644 F.2d at 695. Thus, the Court concludes that Plaintiff's proposed amended complaint would not be futile.[4] For all of the above reasons, the Court will grant Plaintiff's motion to amend his complaint.

---

3. U.S. West also asserts that it cannot be held liable on a theory of negligent entrustment. The Court need not address this argument because Plaintiff does not appear to assert any negligent entrustment claims in his proposed amended complaint. (*See generally* Pl.'s Proposed Am. Compl. at 1–7.)

4. The Court notes that in his proposed amended complaint, Plaintiff attempts to assert a cause of action against U.S. West based on the MFRA, and that to this extent the proposed amended complaint would be futile. However, the Court's present dismissal of this cause of action necessarily extends to Plaintiff's proposed amended complaint as well as to his original complaint.

## III. Conclusion

The Court will grant in part and deny in part U.S. West's September 5, 1996 motion to dismiss for failure to state a claim and for sanctions. The Court will grant U.S. West's motion to dismiss Plaintiff's claims under the MFRA, but will deny U.S. West's motion to impose Rule 11 sanctions against Plaintiff based on these claims. The Court will grant Plaintiff's October 16, 1996 motion to amend his complaint to assert certain negligence claims against U.S. West.

An Order in accordance with this Memorandum Opinion will issue.