David McGREW, Appellant,

v.

Tonella STONE, Appellee.

No. 97–SC–50–DG.

Supreme Court of Kentucky.

Aug. 26, 1999.

Michael T. Connelly, Susan M. Meschler, Louisville, for Appellant.

Bill V. Seiller, Michael C. Bratcher, Seiller & Handmaker, LLP, Louisville, for Appellee.

STUMBO, Justice.

In November of 1992, Appellant was involved in an automobile accident when his car collided with an uninsured vehicle owned by Appellee and driven by a third person, Ailene Carter. Appellee had earlier loaned her car to one Booker Miles, who had a suspended operator's license. Miles had been drinking and asked Carter to drive him home in Stone's car. It was during that trip that the collision occurred.

Appellant filed the instant action in the Jefferson District Court to recover the damages to his automobile. He sued both Stone and Carter and was granted a default judgment against Carter. Under a theory of negligent entrustment, as well as asserting certain provisions of the Kentucky Motor Vehicles Reparation Act (hereinafter referred to as "MVRA"), Appellant sought to hold Stone liable for the damages arising from Carter's use of her uninsured vehicle. The District Court granted Stone summary judgment on the issue of liability and the action was dismissed.

On appeal, the Jefferson Circuit Court reversed the summary judgment as to the negligent entrustment theory, but affirmed as to the MVRA argument. The Court of Appeals affirmed the latter holding and we granted discretionary review.

The precise issue presented for our consideration by this case is whether the MVRA may be construed to impose vicari-

ous liability on the owner of an uninsured vehicle for property damage caused by the alleged negligence of a subpermittee driver.

■ As Appellant notes, the primary purpose of the MVRA is "[t]o require owners ... of motor vehicles ... to procure insurance covering ... legal liability arising out of ownership, operation or use of such motor vehicles." KRS 304.39–010. *See also Crenshaw v. Weinberg*, Ky., 805 S.W.2d 129, 131 (1991). By enacting the MVRA, the legislature intended to create a comprehensive compulsory insurance system that requires owners to provide vehicle security covering basic reparation benefits and that imposes legal liability on vehicle owners for damages or injuries arising out of ownership of or use of the vehicle. KRS 304.39–010; KRS 304.39–080(5). It is Appellant's contention here that when Appellee violated the MVRA and permitted the use of her vehicle without purchasing liability insurance, she chose to be a de facto self-insurer of her car. He contends she should not escape liability for the property damage caused by her car by virtue of the fact that she broke the law, but rather should be held accountable for damages to the same extent as if she had complied with the law.

In accordance with the purpose of the MVRA, this Court has steadfastly denied any exclusions that would dilute or eliminate the minimum security required by the Act. *Beacon Ins. Co. of America v. State Farm Mut. Ins. Co.*, Ky., 795 S.W.2d 62, 63 (1990). Additionally, we note that the MVRA, when adopted, was designed specifically "[t]o correct the inadequacies of the present reparation system...." KRS 304.39–010(8).

Appellee responds by pointing out that KRS 304.39–050(2) provides that "If there is no security covering the vehicle, any contract of basic reparation insurance under which the injured person is a basic reparation insured shall apply." Appellee contends that, while this provision is not directly applicable to property damage, it demonstrates the legislature intended that one who suffers loss by an uninsured vehicle must first look to his own insurer, not the tortfeasor, for redress of his loss.

Having considered the arguments set forth by Appellee, we reject them and their implications. First, it is clear that KRS 304.39–050(2) is limited by its terms to personal injury and does not encompass property damage. KRS 304.39–050(1); KRS 304.39–020(2). Second, under Appellee's construction, one without proper liability insurance would only be liable for the property damage caused by his or her vehicle if she, the owner, were found to have negligently entrusted that vehicle to the driver, whereas one who is properly insured covers the losses of her permittee users regardless of her lack of fault in entrusting the vehicle to another. KRS 304.39–010; KRS 304.39–080(5). Therefore, had Appellee obtained the legally required coverage for her vehicle, Appellant would only have been required to prove that Appellee gave the permittee permission to use her vehicle and that the user's negligence resulted in the damages sought recovered. In sum, we do not believe the legislature, in enacting the MVRA, intended to make it more difficult for an injured party to recover under the circumstances presented in this case than if the law had been obeyed. Indeed, the simplicity of proving only permission to use the vehicle and negligence on the part of the permittee user relieves the injured party of a significant burden that previously existed and corrects one of the inadequacies of the prior system, just as the legislature intended.

In so holding, we acknowledge that the courts of other states have held otherwise when confronted with this issue. *See, e.g., West v. Collins*, 251 Kan. 657, 840 P.2d 435, 443 (1992) (Kansas Automobile Injury Reparations Act does not automatically impose liability on owner/insured for accident between covered permittee driver and uninsured motorist). However, because those states also differ from Kentucky's

approach to no-fault automobile liability insurance in other respects, and considering the great lengths Kentucky has traveled to simplify coverage and recovery for injured parties, we see no need to delve too deeply into those cases. We simply hold that one who chooses to ignore the requirements of the MVRA is not thereby entitled to place additional roadblocks to recovery in the way of those injured by use of his or her vehicle. The decision of the Court of Appeals is hereby reversed and this matter is remanded to the Jefferson Circuit Court for proceedings in accordance with this opinion.

LAMBERT, Chief Justice; and JOHNSTONE and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion, in which GRAVES and KELLER, JJ., join.

COOPER, Justice, dissenting.

Today, we create the new tort of "no insurance." In so doing, the majority opinion ignores the distinction between the law of torts, which determines when a person is liable for damage or injury to another, and the law of insurance, which determines when that person is insured for a liability imposed upon him by the law of torts.

## I. FACTS.

On October 24, 1992, Appellant David McGrew's 1984 Ford Mustang automobile was damaged in a collision with a 1978 Chevrolet pickup truck being driven by Ailene Carter. Carter told McGrew that she was driving the vehicle because the male passengers in the truck were intoxicated and unable to drive. One of those passengers, presumably Booker T. Miles, told McGrew that Carter was his girlfriend and that "they" had borrowed the truck from Miles's aunt, Appellee Tonella Stone. According to Stone, Miles gave her the money to purchase the vehicle and she relinquished control of it to Miles immedi-

ately after the purchase with the understanding that Miles would transfer its title to his own name. However, when the accident occurred, the title was still in Stone's name and the vehicle was uninsured. Stone denied any knowledge that Miles was an inexperienced, careless or reckless driver. The records of the Jefferson District Court reveal that Miles had a history of minor criminal offenses, including three convictions for operating a vehicle without insurance and an appearance on October 6, 1992 for failure to surrender a revoked operator's license. The record does not reflect whether Miles's license was revoked before or after Stone gave him possession of the vehicle. McGrew sued Carter and Stone (but not Miles) in the Jefferson District Court to recover $3,200.00 for damages to his automobile. His Complaint stated the following as his cause of action against Stone:

That the Defendant, Tenella (sic) Stone, negligently entrusted said automobile to the Defendant Ailene Carter and/or said Ailene Carter was operating said automobile within the scope of the family purpose of Tenella (sic) Stone.

A default judgment was entered against Carter. In response to Stone's motion for summary judgment, McGrew asserted that permitting her automobile to be driven without insurance was evidence of Stone's "own negligence," i.e., evidence of negligent entrustment. Stone's motion for summary judgment was granted.

It was not until McGrew filed his notice of appeal to the Jefferson Circuit Court that he first advanced a theory that the compulsory insurance provision of Kentucky's Motor Vehicle Reparations Act (MVRA), KRS 304.39–080(5), creates a cause of action against the owner of an uninsured vehicle for damages caused by the negligence of its operator. McGrew did not claim even then that the failure to provide liability insurance makes the owner liable for the driver's negligence. Rather, he claimed that the failure to provide liability insurance violated KRS 304.39–

080(5) and that such violation was actionable under KRS 446.070. The Circuit Court rejected that argument, but held that there was sufficient evidence to avoid summary judgment on the claim of negligent entrustment and remanded the case to the Jefferson District Court for a trial on that issue. Thus, McGrew won in the Circuit Court on the only issue he had raised in the District Court. Nevertheless, he appealed the Circuit Court's decision to the Court of Appeals; and it was during that appeal that he first advanced the theory now adopted by this Court, i.e., that the owner of an uninsured vehicle is liable for the negligence of anyone driving the vehicle, even absent proof of negligent entrustment or any other existing theory of tort liability.

## II. THE ISSUE IS UNPRESERVED.

Issues not presented to the trial court cannot be raised for the first time on appeal. *Regional Jail Authority v. Tackett,* Ky., 770 S.W.2d 225 (1989); *Kentucky Milk Marketing and Antimonopoly Com'n v. Kroger Co.,* Ky., 691 S.W.2d 893 (1985). To borrow Justice Lukowsky's oft-repeated aphorism, "appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth,* Ky., 544 S.W.2d 219, 222 (1976). Thus, the theory on which the majority has decided this case was not even preserved for appellate review.

## III. TORT LAW.

It is a general principle of common law that the owner of a motor vehicle is not liable for its negligent operation by one using it even with the owner's permission. 8 Am.Jur.2d *Automobiles and Highway Traffic* § 697, n. 37 (1997). Kentucky has subscribed to this principle for many years. "[A]n owner who merely loans his car to another person, though it be his employee, is not liable for his negligence while the borrower is using it for his own purpose." *Higgans v. Deskins,* Ky., 263

S.W.2d 108, 111 (1953). *See also Seaboard Fire & Marine Ins. Co. v. DeMarsh,* Ky., 515 S.W.2d 242 (1974); *Johnson–Kitchens Ford Corp. v. Shifflett,* Ky., 462 S.W.2d 430 (1970); *Farmer v. Stidham,* Ky., 439 S.W.2d 71 (1969), *overruled on other grounds, Keeney v. Smith,* Ky., 521 S.W.2d 242 (1975); *Nantz v. Nantz,* Ky., 354 S.W.2d 283 (1962); *Taulbee v. Mullins,* Ky., 336 S.W.2d 597 (1960); *Wolford v. Scott Nickels Bus Co.,* Ky., 257 S.W.2d 594 (1953); *Hickman v. Strunk,* 303 Ky. 397, 197 S.W.2d 442 (1946); *Slusher v. Hubble,* 254 Ky. 595, 72 S.W.2d 39 (1934); *Packard–Louisville Motor Co. v. O'Neal,* 248 Ky. 438, 58 S.W.2d 630 (1933).

Some jurisdictions have enacted statutes which impose liability on the owner of a vehicle for damages caused by its negligent operation by a permissive user. *E.g.,* Cal.Veh.Code 17150 (West); Idaho Code § 49–2417; Iowa Code Ann. § 321.493 (West); Mich.Comp.Laws Ann. § 257.401 (West); Minn.Stat.Ann. § 170.54 (West); N.Y.Veh. & Traf.Law § 388 (McKinney). In Kentucky, KRS 186.590(3) imposes joint and several liability on the owner of a motor vehicle for damages resulting from its negligent operation by a minor under the age of eighteen if the owner caused or permitted the minor to operate the vehicle. However, there is no Kentucky statute which imposes liability on the owner of a vehicle for damages caused by its negligent operation by an adult permissive user. Absent such a statute, mere ownership does not create liability for damages caused by the negligence of an adult operator.

There are exceptions to the common law rule, *e.g.,* where the permissive user was operating the vehicle as the agent or employee of the owner at the time of the accident, *Hunt v. Whitlock's Adm'r,* 259 Ky. 286, 82 S.W.2d 364 (1935); or where the vehicle was furnished to the operator pursuant to the family purpose doctrine, *Stowe v. Morris,* 147 Ky. 386, 144 S.W. 52 (1912); or where the owner consented to its operation by another while retaining

possession and control of the vehicle, *e.g.* as a passenger, *McCulloch's Adm'r v. Abell's Adm'r*, 272 Ky. 756, 115 S.W.2d 386 (1938). The owner can also be held liable for the negligence of a permittee of his agent, servant, or family member, if the agent, servant or family member retains possession and control of the vehicle while it is being operated by the second permittee, *Thixton v. Palmer*, 210 Ky. 838, 276 S.W. 971 (1925), or if the second permittee is also acting as the agent or servant of the owner. Otherwise, absent proof of negligent entrustment, the owner is not liable for the negligence of a second permittee. *Seaboard Fire & Marine Ins. Co. v. De-Marsh, supra.*

The common law theory of negligent entrustment is that one who entrusts his vehicle to another whom he knows to be inexperienced, careless, or reckless, or given to excessive use of intoxicating liquor while driving, is liable for the natural and probable consequences of the entrustment. *E.g., Owensboro Undertaking & Livery Ass'n v. Henderson*, 273 Ky. 112, 115 S.W.2d 563 (1938); *Brady v. B. & B. Ice Co.*, 242 Ky. 138, 45 S.W.2d 1051 (1932). The mere entrustment of a vehicle to an unlicensed driver does not render the owner liable for the driver's negligence absent proof that the driver was incompetent and the owner had knowledge of that fact. 8 Am.Jur.2d *Automobiles and Highway Traffic* § 702 (1997), citing *Lutfy v. Lockhart*, 37 Ariz. 488, 295 P. 975 (1931); *Greeley v. Cunningham*, 116 Conn. 515, 165 A. 678 (1933); *Pugliese v. McCarthy*, 10 N.J. Misc. 601, 160 A. 81 (1932). Nor is the owner (Stone) liable for the original permittee's (Miles's) negligent entrustment to a second permittee (Carter) absent evidence that the owner gave permission for the second permittee to drive the vehicle or knew that someone other than the original permittee would drive it. *Knoles v. Salazar*, 298 Ark. 281, 766 S.W.2d 613 (1989); *Vilas v. Steavenson*, 242 Neb. 801, 496 N.W.2d 543 (1993). *Compare Deck v. Sherlock*, 162 Neb. 86, 75 N.W.2d 99 (1956), in which the owner negligently en-

trusted his vehicle to one whom he knew had been drinking and would continue drinking in the company of the ultimate negligent driver, who was present in the vehicle and intoxicated when the vehicle was negligently entrusted to the original permittee.

Thus, Stone could be held liable to McGrew under the theory of negligent entrustment if she negligently entrusted her vehicle to Carter, or if she entrusted her vehicle to Miles, who then negligently entrusted it to Carter. Under the latter scenario, Stone would be liable in tort for Carter's negligence upon proof that Stone knew or should have known that (1) Miles would permit Carter to drive the vehicle and (2) Carter was an inexperienced, incompetent or reckless driver. Since Miles was not operating the vehicle at the time of the accident, the fact that Stone may have negligently entrusted the vehicle to him is immaterial. Stone did not seek discretionary review of the Jefferson Circuit Court's reversal of the District Court's summary judgment on the issue of negligent entrustment. Thus, McGrew's cause of action on that theory remains viable and presumably will be resolved in a subsequent trial by jury.

## IV. INSURANCE LAW.

A standard automobile liability policy does not enlarge the insured's liability but insures such liability as may exist under the varying laws and to the limited extent and upon the conditions found in the policy. Before an insurer can be found liable, the insured must be liable but it does not follow that because an insured is liable that his insurer is.

*Blashaski v. Classified Risk Ins. Corp.*, 48 Wis.2d 169, 179 N.W.2d 924, 926 (1970). *See also* 7 Am.Jur.2d *Automobile Insurance* § 149 (1997); L. Russ and T. Segalla, *Couch on Insurance* § 108:12 (3d ed. Clark Boardman Callaghan 1995) ("liability insurer is not liable when, as a matter of tort law, the insured is not liable").

Conversely, the mere fact that the vehicle involved in the accident is insured does not mean that the owner/insured is liable in tort to the injured party or that the insurance must always be payable to the injured party. *See Seaboard Fire & Marine Ins. Co. v. DeMarsh, supra,* in which the owner of the insured vehicle, who was the named insured of the policy, was held entitled to a summary judgment with respect to a personal injury claim arising out of the negligent operation of the vehicle by another who was neither his agent nor his employee; and *Preferred Risk Mut. Ins. Co. v. Kentucky Farm Bureau Mut. Ins. Co.,* Ky., 872 S.W.2d 469 (1994), in which the owner was held to have no duty to provide minimum tort liability insurance covering the negligence of a non-permissive user. Thus, insurance coverage is unavailable absent tort liability; tort liability is not predicated upon the existence of insurance coverage; and the compulsory liability insurance statute, KRS 304.39–080(5), does not require an owner to insure against the negligence of one using his vehicle without his express or implied permission.

Even absent tort liability on the part of the owner of the insured vehicle, the standard "omnibus clause" of a liability insurance policy will provide coverage for a permissive user, including a second permittee operating the vehicle for the benefit or advantage of the original permittee, though without the owner's knowledge and consent.

> [A] second permittee driving the automobile for the benefit or advantage of the first permittee is afforded the protection of the Omnibus Clause under the theory that the automobile is being operated within implied permission of the named insured.

*Seaboard Fire & Marine Ins. Co. v. DeMarsh,* 515 S.W.2d 242, 243. In that scenario, the "insured" under the policy is not the "named insured" who purchased the policy and owned the vehicle, but an "additional insured" who was operating the vehicle. But if the operation of the insured vehicle by the second permittee is of benefit to neither the owner nor the original permittee, the second permittee is not an "additional insured" under the omnibus clause of the owner's policy. Thus, in *Dutton v. State Farm Mut. Auto. Ins. Co.,* 383 So.2d 519 (Ala.1980), there was no coverage for the negligence of a fourteen-year-old girl to whom the insured owner's son had loaned the vehicle for the purpose of running a personal errand for herself.

There was no policy of insurance in the case *sub judice,* thus no omnibus clause which might have extended coverage to Carter as an "additional insured;" and, except for the theory of negligent entrustment, there is no tort theory under which Stone could be liable for Carter's negligence. Thus, in order to create liability where none exists, the majority opinion mixes apples with oranges, *i.e.,* the law of torts with the law of insurance, and concludes that the failure of an uninsured vehicle's owner to purchase liability insurance results in the owner being liable in tort to one who is damaged as a result of the negligence of an operator of the vehicle (permissive or otherwise), presumably up to the minimum limits specified in KRS 304.39–110(1)(a) (although the opinion does not so state), thus concocting the tort of "no insurance."

To support this conclusion, the majority incorrectly states by paraphrase that KRS 304.39–010 provides that "the primary purpose of the MVRA is '[t]o require owners ... of motor vehicles ... to procure insurance covering ... legal liability arising out of ownership, operation or use of such motor vehicles.' " Slip op., p. 2. KRS 304.39–010 actually states as follows:

> The toll of about 20,000 motor vehicle accidents nationally and comparable experience in Kentucky upon the interests of victims, the public, policyholders and others require that improvements in the reparations provided for herein be adopted *to effect the following purposes:*

(1) To require owners, registrants *and operators* of motor vehicles in the Commonwealth to procure insurance covering *basic reparation benefits and legal liability* arising out of ownership, operation or use of such motor vehicles; (Emphasis added.)

. . . .

The statute then proceeds to enumerate seven additional *purposes* sought to be effectuated by the enactment of the MVRA, most of which deal with the establishment of a no-fault system of compensation for personal injuries sustained in motor vehicle accidents. Except by implication from the reference to "legal liability" in paragraph (1), *supra,* there is not one word in KRS 304.39–010 from which it can be inferred that the purpose of the MVRA is to facilitate a liability claimant's recovery of damages for injury to his *property.* In fact, the quoted paragraph, along with KRS 304.39–080(5) (compulsory insurance), KRS 304.39–110 (minimum liability limits), and KRS 304.39–310 (proof of insurance) are the only provisions in the forty sections of the MVRA which pertain in any way to liability insurance. Most of the MVRA's forty sections pertain to the payment of no-fault benefits for personal injuries. KRS 304.39–080(5) requires that a motor vehicle owner provide "security for the payment of *basic reparation benefits* in accordance with this subtitle *and* security for payment of *tort liabilities,* arising from maintenance or use of the motor vehicle." (Emphasis added.) Thus, while compulsory liability insurance may have been one of the purposes of the MVRA, its primary purpose clearly was to provide a new no-fault system of compensation for personal injuries resulting from automobile accidents.

Compulsory minimum liability insurance coverage was required in one form or another in this Commonwealth long before the enactment of the MVRA. KRS 187.290, *et seq.* (the "Financial Responsibility Law"), enacted 1946 Ky.Acts, ch. 118; repealed 1974 Ky.Acts, ch. 385 § 35 and 1978

Ky.Acts, ch. 434 § 9. The only difference between the former Financial Responsibility Law and KRS 304.39–080(5) is that KRS 187.330 required the owner or operator to provide proof of minimum tort liability insurance *after* the occurrence of an accident, whereas KRS 304.39–080(5) requires such proof at any time before or after the occurrence of an accident. Thus, the concept of compulsory minimum liability insurance did not have its genesis in the enactment of the MVRA; and, contrary to the assertion made in the majority opinion, KRS 304.39–010 does *not* provide that the primary purpose of the MVRA is to create compulsory liability insurance. Certainly, nothing in the MVRA suggests a legislative intent to change the law of torts by holding an owner of an uninsured vehicle personally liable for the negligence of its operator. Yet, our new tort of "no insurance" holds Stone absolutely liable for Carter's negligence even though, depending on how the facts of this case ultimately develop, Carter may not have been entitled to coverage even if the vehicle had been insured. *Preferred Risk Mut. Ins. Co. v. Kentucky Farm Bureau Mut. Ins. Co., supra* (no coverage for a non-permissive user).

Nor does the majority opinion condition the uninsured owner's liability on the uninsured status of the operator. If both the owner and the operator were insured by separate policies of liability insurance, both policies would provide coverage for the accident, the owner's policy providing primary coverage and the operator's policy providing secondary coverage. 7A Am. Jur.2d *Automobile Insurance* § 545 (1997). Under the new tort of "no insurance" would the liability of the insurer of an insured operator be secondary to the liability of the uninsured owner? If so, would the insurer of the operator be entitled to indemnity from the uninsured owner because of the owner's failure to provide the primary coverage required by KRS 304.39–080(5)?

Virtually every state has a compulsory liability insurance statute. While McGrew's argument is one of first impression in this Commonwealth, it has been considered and rejected in a number of other jurisdictions. In fact, every court which has addressed the issue to date has held that a compulsory liability insurance statute does not create a civil cause of action by an injured third party against the owner of an uninsured vehicle; nor is the owner vicariously liable for the negligence of the operator. *Maya v. General Motors Corp.*, 953 F.Supp. 1245 (D.N.M. 1996) (interpreting New Mexico law); *West v. Collins*, 251 Kan. 657, 840 P.2d 435 (1992); *Robinson v. Moore*, 580 So.2d 1109 (La.Ct.App.1991); *Washington v. Stephens Leasing*, 540 So.2d 433 (La.Ct.App.1989); *Dickerson v. Boom, Inc.*, 532 So.2d 814 (La.Ct.App.1988); *Friday v. Mutz*, 483 So.2d 1269 (La.Ct.App.1986); *Ulrigg v. Jones*, 274 Mont. 215, 907 P.2d 937 (1995); *Stover v. Critchfield*, 510 N.W.2d 681 (S.D. 1994) (interpreting both South Dakota and Colorado law).

The majority dismisses this unanimity of opinion "because those states also differ from Kentucky's approach to no-fault automobile liability insurance in other respects...." Slip op., p. 4. Of course, no-fault and liability insurance are separate and distinct types of coverages, the former providing benefits regardless of fault and the latter providing benefits conditioned upon fault. The majority opinion's inability to distinguish between these separate and distinct types of insurance coverages mirrors its inability to distinguish between tort and insurance law concepts. The issue here is not the broad general purpose of the MVRA, *but whether a compulsory liability insurance statute imposes tort liability* on the owner of an uninsured vehicle for the negligence of an operator of that vehicle; and every court which has addressed and rejected that proposition has done so in the context of a statute with provisions virtually identical to those contained in KRS 304.39–080(5) and KRS 304.39–110(1)(a).

## V. NEGLIGENCE PER SE.

Appellant McGrew continues to claim a right of recovery on the basis of KRS 446.070, which provides as follows:

> A person *injured* by the violation of any statute may recover from the offender such *damages* as he sustained *by reason of the violation*, although a penalty or forfeiture is imposed for such violation. (Emphasis added.)

The majority opinion correctly ignores this argument for the obvious reason that it is without merit. This statute is but a codification of the common law theory of negligence per se. *Real Estate Mktg., Inc. v. Franz*, Ky., 885 S.W.2d 921, 927 (1994). By its very language, it requires that as a prerequisite to recovery, a statutory violation must have been the proximate cause of an injury suffered by the plaintiff.

> The statute does not give a right of action to every person against any one violating a statute, but only to persons suffering injury as the direct and proximate result thereof; and then only for such damage as they may sustain.

*Shields v. Booles*, 238 Ky. 673, 38 S.W.2d 677, 681 (1931).

As pointed out in *Real Estate Mktg., Inc. v. Franz, supra,* a cause of action alleging negligence per se, must be premised upon a destructive occurrence traceable to the violation of the statute. *Id.* at 927. Stone's failure to procure compulsory liability insurance was not the destructive occurrence which damaged McGrew's vehicle. The destructive occurrence was the collision alleged to have been caused by the negligence of Carter. Stone's failure to provide liability insurance coverage for her vehicle only denied McGrew a source of payment for his injury. Thus, KRS 446.070 provides no basis for relief in this case.

For the reasons stated herein, I would affirm the decisions of the Jefferson Circuit Court and the Court of Appeals and

remand this case to the Jefferson District Court for a trial on the merits of McGrew's claim against Stone on the theory of negligent entrustment.

GRAVES and KELLER, JJ., join this dissent.