RENDERED:  MAY 12, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0306-ME

CARMEN GARDNER AND MARK
RUDOLPH                                                                APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE CHARLES L. CUNNINGHAM, JR., JUDGE
ACTION NO. 18-CI-003420


GEICO GENERAL INSURANCE
COMPANY                                                                  APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; JONES AND KAREM, JUDGES.

JONES, JUDGE:  The Appellants, Carmen Gardner and Mark Rudolph, seek

review of the Jefferson Circuit Court's February 11, 2022 order (1) granting

judgment in favor of the Appellee, GEICO General Insurance Company

("GEICO"); and (2) denying Appellants' motion to certify a class pursuant to CR[1]

23 as moot. For the reasons below, we affirm.

## I. BACKGROUND

The basic facts are not disputed. Appellants each had separate motor

vehicle insurance policies with GEICO, which included basic reparation benefits

("BRB") of up to $10,000 per person per accident. Gardner was injured in a motor

vehicle accident that occurred on or about March 6, 2017; Rudolph was injured in

a motor vehicle accident that occurred on or about June 29, 2017.

Gardner and Rudolph each submitted timely notifications to GEICO

along with applications for BRB. Gardner sought BRB for medical care she

received in March and April 2017 from Exacta Care and Kentuckiana Pain

Associates totaling $10,197.30. Rudolph sought BRB for medical care he received

in September and October 2017 from Kort, LLC and Shannon S. Voor, PhD,

PLLC, totaling $2,718.00.

After receiving Appellants' respective BRB applications, GEICO

tendered payment to Appellants' medical providers along with Explanation of

Reviews ("EORs"). The EORs indicated that GEICO had reduced certain line-

item charges billed by the medical providers. For example, on March 8, 2017,

Exacta Care billed Gardner $400.00 for a thirty-minute, new-patient visit, but

---

[1] Kentucky Rules of Civil Procedure.

GEICO only tendered payment of $240.41 for the visit. (Record ("R.") at 115.) The EOR stated that the billed amount was reduced because the "service charge exceeds an amount that is reasonable when compared to the charges of other providers in the same geographic area." (R. at 115-16.) The EOR further provided in bold print that "[p]ursuant to KRS[2] 304.39-245, [GEICO is] offering the enclosed check amount for medical charges that were reasonable and necessary in relation to the covered automobile accident."

In total, Gardner submitted medical bills to GEICO totaling $10,197.30, but GEICO tendered only $5,632.66 to Gardner's medical providers. Similarly, Rudolph submitted medical bills totaling $2,718.00, but GEICO tendered only $1,460.58 as payment for those bills.[3] The medical providers cashed the checks GEICO tendered them without any indication that they were doing so under a reservation of right. Despite having provided affidavits as part of this action that they have not written off the balances, none of the providers has sought payment directly from either Gardner or Rudolph.

After learning that GEICO had reduced their bills, Appellants filed a putative class action in Jefferson Circuit Court seeking to recover damages as a

---

[2] Kentucky Revised Statutes.

[3] While Gardner and Rudolph are the only named plaintiffs, their complaint included allegations concerning the bills submitted by putative class member R. Abbas who submitted medical bills to GEICO totaling $6,263.00 that were reduced to $4,376.84 by GEICO.

result of GEICO "making a unilateral reduction in payment of its insureds' incurred medical charges, leaving its insureds legally responsible for the balance and subject to a lawsuit or collection efforts from the medical provider." (R. at 1-2.) As relief, Appellants demanded payment from GEICO for the difference between the submitted bills and the reduced amounts actually paid, 18% interest on those outstanding balances, and attorney fees. (R. at 18-19.) Additionally, Appellants sought declaratory and injunctive relief, including the protection of a release and indemnification from GEICO on all medical bills GEICO unilaterally reduced and only partially paid to their medical providers. (R. at 18.)

After being served with Appellants' complaint, GEICO moved the trial court for an extension of time to answer or file a dispositive motion. In the interim, on July 18, 2018, Appellants filed their motion for class certification kicking off a multi-year period of motions and related briefings, including several hearings before the trial court concerning class certification as well as the legal viability of Appellants' substantive claims against GEICO.[4] Ultimately, Appellants' motions for class certification, for summary judgment, and for

---

[4] During this period, the parties also unsuccessfully tried to reach a mediated class settlement.

declaratory/injunctive relief,[5] along with GEICO's motion to dismiss, came before the trial court for determination.[6]

On February 18, 2022, the trial court entered an order addressing the pending motions. The trial court determined that Appellants had failed to allege individually viable legal claims and granted judgment in favor of GEICO. It then denied Appellants' motion for class certification as moot. This appeal followed.

## II. CLASS CERTIFICATION

Pursuant to CR 23.03(1), "the court must determine by order whether to certify [an] action as a class action." *Jones v. Clark County*, 635 S.W.3d 54, 56 n.3 (Ky. 2021). CR 23.06 allows an immediate, interlocutory appeal of "[a]n order granting or denying class action certification . . . within 10 days after the order is entered." We review the circuit court's determination as to class certification for abuse of discretion. *Hensley v. Haynes Trucking LLC*, 549 S.W.3d 430, 444 (Ky. 2018). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

---

[5] Appellants admit that GEICO changed its billing practices effective November 1, 2018, so any declaratory judgment would necessarily be limited to the period before the change.

[6] GEICO attached materials to its motion to dismiss that went beyond the allegations contained in Appellants' motion to dismiss. Additionally, Appellants included affidavits from the medical providers and other materials as part of their motion for summary judgment. Accordingly, GEICO's motion to dismiss is more properly considered a motion for summary judgment. *Hoke v. Cullinan*, 914 S.W.2d 335, 338 (Ky. 1995).

While CR 23.03(1) requires the trial court to decide "[a]t an early practicable time . . . whether to certify the action as a class action[,]" there is no rule that dictates the order in which the court must address the class certification decision relative to the disposition of other motions. WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:8 (6th ed. 2022). When a defendant moves for dismissal or summary judgment before a ruling on class certification, "courts view the defendant as deliberately waiving the possibility of a victory against the whole class . . . [and] therefore permit such motions to go forward so long as a defendant is willing to waive the 'protections' that certification could offer." *Id.* at § 7:10 (footnote omitted); *Thompson v. County of Medina, Oh.*, 29 F.3d 238, 241 (6th Cir. 1994)[7] (quoting *Wright v. Schock*, 742 F.2d 541, 545-46 (9th Cir. 1984) ("Rule 23 clearly favors early determination of the class issue, but where considerations of fairness and economy dictate otherwise, and where the defendant consents to the procedure, it is within the discretion of the district court to decide the motion for summary judgment first.").

While it is true that Appellants' motion for class certification was pending for an unusually long period of time, we cannot conclude this was the

[7] Given the similarity between CR 23 and its federal counterpart and in the absence of controlling Kentucky precedent, we look to federal cases for guidance. "It is well established that Kentucky courts rely upon Federal caselaw when interpreting a Kentucky rule of procedure that is similar to its federal counterpart." *Nebraska Alliance Realty Co. v. Brewer*, 529 S.W.3d 307, 311 (Ky. App. 2017); *Curtis Green & Clay Green, Inc. v. Clark*, 318 S.W.3d 98, 105 (Ky. App. 2010).

result of any abuse of discretion by the trial court. Appellants' class certification motion was filed about the same time as the dispositive motions. The briefing on the motions was especially voluminous and protracted extending into the early part of the COVID-19 pandemic. By the time all was said and done, the trial court had the class certification motion along with several dispositive motions pending before it as part of a record consisting of over a thousand pages. At various times throughout the proceedings below, the parties pressed the trial court to rule on the motions according to whatever sequence they believed was most beneficial to them at the time. The trial court clearly put a great deal of thought into the most expedient sequence in which to issue its rulings. After several hearings, the trial court ultimately determined that deciding the pending dispositive motions relative to the individual Appellants' claims was the best way to procced.

The trial court then concluded that GEICO was entitled to summary judgment on the individual claims. It was on this basis alone that it denied Appellants' motion for class certification as moot. In fact, in doing so, the trial court noted that it would have certified a class had it determined that Appellants alleged legally viable individual claims against GEICO. "As an aside, if the Court were to conclude there was an actionable claim set out in Plaintiff's Complaint and subsequent pleadings, class certification would be appropriate." (R. at 1186.)

It is well established that where dismissal or summary judgment have been properly granted to the defendant prior to certification, the trial court is free to deny any pending certification motion as moot without further consideration. "If the defendant prevails on the summary judgment motion, in most circumstances, the court will be relieved of the need to rule on the issue of class certification." NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:10; *Plotnick v. Computer Sciences Corporation Deferred Compensation Plan for Key Executives*, 875 F.3d 160, 164, (4th Cir. 2017) ("Because affirmance of the district court's grant of summary judgment disposes of Plotnick and Kennedy's claims, we decline to address the district court's denial of class certification."); *McKinney v. Carlton Manor Nursing & Rehabilitation Center, Inc.*, 868 F.3d 461, 463 (6th Cir. 2017) (holding that the district court "granted summary judgment for [the defendant] and thus had no need to rule on [the plaintiff's] class certification motion"); *In re Wholesale Grocery Products Antitrust Litigation*, 946 F.3d 995, 1004 (8th Cir. 2019) ("Having affirmed the district court's grant of summary judgment in favor of SuperValu, we need not address on appeal Village Market's challenge to the district court's denial of its motion to reconsider class certification, as the question is moot."); *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (noting that district court had granted defendant's motion for summary judgment and "denied class certification as moot," then affirming grant of summary

judgment); *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) (denying plaintiff's motion for class certification, finding that "[w]ith no meritorious claims, certification of those claims as a class action is moot"); *Garcia v. Veneman*, 211 F.R.D. 15, 19 n.2 (D.D.C. 2002) ("Once the court disposes of a claim, the court need not consider the disposed-of claim as a basis for class certification."); *Greenlee County, Ariz. v. United States*, 487 F.3d 871, 880 (Fed. Cir. 2007) ("[I]ssues related to class certification were moot in light of [a] resolution against a plaintiff of a motion to dismiss or for summary judgment.").

Thus, this appeal is not so much a review of whether the trial court abused its discretion when it denied certification, as it is about whether the trial court properly granted summary judgment to GEICO on Appellants' individual claims. If summary judgment was properly granted, there was no abuse of discretion in denying the class certification motion as moot. If summary judgment was improperly granted, then the class certification decision is clearly not moot and must be addressed on remand. Accordingly, we now turn to substantive issues with respect to the viability of Appellants' individual claims.

### III. SUMMARY JUDGMENT

"An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law."

-9-

*Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018). The standard of review for an appellate court is *de novo* because only legal issues are involved. *Isaacs v. Sentinel Ins. Co. LTD.*, 607 S.W.3d 678, 681 (Ky. 2020).

Appellants assert that GEICO violated the Kentucky Motor Vehicle Reparations Act ("MVRA") by unilaterally reducing its payment of properly submitted no-fault bills thereby impermissibly shifting the burden of proving the reasonableness of medical bills and seeking payment of these bills onto the no-fault claimants. They further assert that the no-fault claimants' right to sue the reparations obligor when benefits are not properly paid should, of itself, have prevented dismissal by the trial court.

Before delving into the specifics of Appellants' claims, it is necessary to understand the parties' basic rights and responsibilities under the MVRA. "By enacting the MVRA, the legislature intended to create a comprehensive compulsory insurance system that requires owners to provide vehicle security covering basic reparation benefits and that imposes legal liability on vehicle owners for damages or injuries arising out of ownership of or use of the vehicle." *McGrew v. Stone*, 998 S.W.2d 5, 6 (Ky. 1999). Central to accomplishing the MVRA's purpose is the statutory mandate that "if [an] accident causing injury occurs in this Commonwealth every person suffering ***loss*** from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits,

-10-

unless he has rejected the limitation upon his tort rights as provided in KRS 304.39-060(4)." KRS 304.39-030(1) (emphasis added). "The maximum amount of basic reparation benefits payable for all economic *loss* resulting from injury to any one (1) person as the result of one (1) accident shall be ten thousand dollars ($10,000), regardless of the number of persons entitled to such benefits or the number of providers of security obligated to pay such benefits." KRS 304.39-020(2) (emphasis added).

"Loss" under the MVRA is defined as "accrued economic loss consisting only of medical expense, work loss, replacement services loss, and, if injury causes death, survivor's economic loss and survivor's replacement services loss." KRS 304.39-020(5). This case involves the medical expense element of loss. The MVRA defines "medical expense" as "***reasonable charges*** incurred for reasonably needed products, services, and accommodations, including those for medical care, physical rehabilitation, rehabilitative occupational training, licensed ambulance services, and other remedial treatment and care." KRS 304.39-020(5)(a) (emphasis added).

KRS 304.39-210 details how claims are to be presented to and paid out by the obligor. It provides:

> (1) Basic and added reparation benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as work loss, replacement services loss, or medical expense is incurred. Benefits are overdue if not

paid within thirty (30) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, unless the reparation obligor elects to accumulate claims for periods not exceeding thirty-one (31) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, and pays them within fifteen (15) days after the period of accumulation. Notwithstanding any provision of this chapter to the contrary, benefits are not overdue if a reparation obligor has not made payment to a provider of services due to the request of a secured person when the secured person is directing the payment of benefits among the different elements of loss. If reasonable proof is supplied as to only part of a claim, and the part totals one hundred dollars ($100) or more, the part is overdue if not paid within the time provided by this section. Medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant, if the claimant so designates.

(2) Overdue payments bear interest at the rate of twelve percent (12%) per annum, except that if delay was without reasonable foundation the rate of interest shall be eighteen percent (18%) per annum.

(3) A claim for basic or added reparation benefits shall be paid without deduction for the benefits which are to be subtracted pursuant to the provisions on calculation of net loss if these benefits have not been paid to the claimant before the reparation benefits are overdue or the claim is paid. The reparation obligor is entitled to reimbursement from the person obligated to make the payments or from the claimant who actually receives the payments.

(4) A reparation obligor may bring an action to recover benefits which are not payable, but are in fact paid, because of an intentional misrepresentation of a material fact, upon which the reparation obligor relies, by the

insured or by a person providing an item of medical expense. The action may be brought only against the person providing the item of medical expense, unless the insured has intentionally misrepresented the facts or knows of the misrepresentation. An insurer may offset amounts he is entitled to recover from the insured under this subsection against any basic or added reparation benefits otherwise due.

(5) A reparation obligor who rejects a claim for basic reparation benefits shall give to the claimant prompt written notice of the rejection, specifying the reason. If a claim is rejected for a reason other than that the person is not entitled to the basic reparation benefits claimed, the written notice shall inform the claimant that he may file his claim with the assigned claims bureau and shall give the name and address of the bureau.

KRS 304.39-210.

Pursuant to KRS 304.39-020(5)(a) "[t]here shall be a presumption that any medical bill submitted [to the obligor] is reasonable." *Id.* However, effective July 15, 1998, the MVRA allows the obligor to "request *or* negotiate a reduction or modification of charges from a provider of services to a secured person." KRS 304.39-245 (emphasis added). The MVRA prohibits a medical provider that agrees to such a reduction or modification of the charges from billing the secured person for the balance. *Id.* The MVRA does not indicate how the insurance obligor is to conduct a negotiation with the medial provider or set forth what constitutes acceptance by the medical provider.

-13-

However, in 2014, the Department of Insurance ("Department") issued an advisory bulletin detailing how, in its opinion, insurance companies should proceed when they wish to request a reduction of charges from a medical provider pursuant to KRS 304.39-245.[8]  Sharon P. Clark, Kentucky Insurance Bulletins and Related Materials, KY Bulletin No. 2013-4 (#2), 2014 WL 624668 (Feb. 18, 2014).  The bulletin is clear that "if the insurer reduces a provider billing in reference to Kentucky No-Fault benefits, then the insurer must demonstrate to the Department that a negotiation with the provider has been attempted."  *Id.*  The bulletin provides examples of evidence of negotiation that the Department believes comply with KRS 304.39-245 such as:

> a statement on the EOB indicating an OFFER of payment; a documented phone call in the claim log indicating an attempt by the insurer to negotiate with the provider; a letter explaining the reduction and indicating it is an OFFER of payment; or, a contract with a provider which expressly states the reduction is agreed upon and which includes reference to Kentucky No-Fault benefits.

KY Bulletin No. 2013-4 (#2), 2014 WL 624668.

---

[8]  We note the bulletin is an informal agency guidance not issued pursuant to the Department's rulemaking procedures.  As such, we are not required to defer to the Department's interpretation of the statute.  However, this does not mean, we should discount it entirely.  "While not controlling upon the courts by reason of [its] authority, [informal administrative materials like the bulletin] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.  The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 164, 89 L. Ed. 124 (1944).

Turning to the facts at hand, GEICO maintains that its process complied with KRS 304.39-245, and that it produced evidence of sufficient negotiation such that Appellants' claims against it must fail. Relying on *Government Employees Insurance Company v Sanders*, 569 S.W.3d 923 (Ky. 2018), Appellants assert that GEICO's actions were unlawful under the MVRA insomuch as GEICO tried to force a unilateral acceptance of a negotiated sum on the medical providers instead of having the courts decide the issue.

While the facts of *Sanders* are somewhat analogous, there are important differences that make *Sanders* largely inapposite. The named plaintiffs in *Sanders*, Anita Houchins and Jordan Sanders, sought chiropractic care for injuries they sustained in an automobile accident and presented the bills to GEICO for payment. After a paper review, GEICO *denied* BRB coverage, asserting that the chiropractic care was not reasonably necessary to treat the injuries Houchins and Sanders sustained in the automobile accident. Houchins and Sanders sued on behalf of themselves and a putative class, claiming GEICO violated the MVRA by unilaterally denying them BRB coverage based solely on a paper medical review. The Kentucky Supreme Court agreed, holding that GEICO could not *deny* an otherwise proper claim on the basis that it was not reasonably necessary. Rather, GEICO was required to make prompt payment and could seek recovery of any improper payment by filing an action in court against the party who made the

misrepresentation of a material fact causing the improper payment, as set forth in KRS 304.39-210(4).

As *Sanders* made clear, the only way an insurance obligor can rebut the presumption of reasonableness for care provided is through litigation, using the process set out in KRS 304.39-210(4). This process requires the obligor to first pay the claim and then file suit against the party who misrepresented that the care was necessary. The obligor cannot *deny* the claim based solely on a paper review. However, *Sanders* did not address the situation here, in which the obligor *accepts* the claim as related to the fact of care and takes issue only with the amount the provider billed for that care.

Appellants argue that KRS 304.39-210(4) should apply equally to the amount of medical bills. This argument overlooks that the fact that, in 1998, the General Assembly enacted a separate provision, KRS 304.39-245, that governs the amount of medical bills as distinct from the necessity of the care. The purpose of this statute was clearly to create a process for obligors and medical providers to negotiate a bill short of having to burden the courts with such disputes. If we were to follow *Sanders* and require the obligor to pay the bill and then file suit to accomplish any reduction, it would effectively nullify KRS 304.39-245. We decline to interpret the statute in such a way that would render it meaningless. The operative question then is whether GEICO complied with KRS 304.39-245.

While Appellants make much out of what they characterize as GEICO's "unilateral" action, KRS 304.39-245 permits the reparations obligor to take the first step by requesting or negotiating "a reduction or modification of charges from a provider of services to a secured person." The statute does not require the reparations obligor to seek approval from either the courts or the insured to do so.

Here, GEICO sent the medical providers detailed line-item EORs listing: the date of service, procedure code, description, charge, reduction amount, payment amount, and reduction explanation. As related to these claims, the reason specified by GEICO in each instance was "the service charge exceeds an amount that is reasonable when compared to other providers in the same geographic area." Finally, in bold face type the EORs state: "Pursuant to KRS 304.39-245, we are offering the enclosed check amount for medical charges that were reasonable and necessary in relation to the covered automobile accident."

The Department of Insurance indicated in its bulletin that such a process demonstrates action on the part of the insurer to negotiate a claim. While the bulletin is not binding on this Court, we cannot appreciate why such action is insufficient. In fact, such action has always been the customary manner to dispute

a billed sum. *Cunningham v. Standard Const. Co.*, 134 Ky. 198, 119 S.W. 765, 767 (1909).[9]

The EORs constitute a request by the insurance obligor to the medical providers for a reduction in the amount of the bills. We cannot see any way that such a procedure violates KRS 304.39-245; in fact, it appears to be exactly how the General Assembly intended the statute to operate. The larger question is whether the request was agreed to by the medical providers. If not, then GEICO would have been required to pay the bills in full and then seek recourse in court as provided in *Sanders*. In turn, GEICO's failure to do so would provide Appellants with a cause of action against it.

On this point, *Weickert v. Alliant Health Systems, Inc.*, 954 S.W.2d 314, 317 (Ky. 1997), is instructive. Therein, the appellant, James Weickert, received medical care from the appellee Alliant Health Systems. The care was covered by Weickert's insurance company, Indiana State Council of Plasterers/Cement Masons ("ISCP"). Following its review of the bills, ISCP determined the amount billed was too high. It sent payment for approximately

---

[9] We note that the rules for accord and satisfaction are slightly different depending on whether the amount due is liquidated or unliquidated. As between the patient and the medical provider, it could be held that the sum is liquidated insomuch as there is a direct contractual relationship between the two. However, the reparation obligor's duty to pay BRB arises from the MVRA. Under the MVRA, the obligor is responsible for reasonable charges for necessary medical care. KRS 304.39-020(5)(a). Even though the bill is presumed reasonable, the presumption is rebuttable. Therefore, we cannot conclude that the obligor owes a liquidated sum. A "reasonable" charge cannot be considered liquidated. *Warfield Nat. Gas Co. v. Allen*, 261 Ky. 840, 88 S.W.2d 989, 991 (1935).

84% of the total bill. The check tendered by ISCP stated it was a "full and final settlement." The check was deposited in Alliant's account without a reservation of right to seek the balance of the bill. Alliant then sued Weickert for the balance of its bill. The Kentucky Supreme Court, however, held that Alliant was barred from suing where it failed to take "steps to immediately and explicitly reserve its rights to sue for the balance of the amount owed." *Id.* at 316. By cashing the check tendered by ISCP without the reservation of any right, Alliant had agreed to accept ISCP's check as payment in full. *Id.*

The notation on GEICO's EORs cited KRS 304.39-245 and was offered as payment for what it believed was the reasonable amount for the care provided to Appellants. By cashing the checks without reserving their rights, the medical providers agreed to accept the amount tendered as full payment cutting off their right to pursue Appellants for the balances. *Weickert*, 954 S.W.2d at 317 ("[W]hen a claim is in dispute and the debtor delivers to his creditor a check which he clearly states is in full payment of the claim, and the creditor collects the check without objection, this constitutes a good accord and satisfaction."); KRS 304.39-245 ("In no event shall a provider of services which agrees to a reduction or modification of the charges bill the secured person for the amount of the reduction or modification."). In turn then, Appellants have no right to sue GEICO for payment of the remainder of the bills. There is nothing left to pay.

-19-

We note that had the medical providers properly reserved their rights, this would be a different case. They could have easily done so by making a notation on the checks prior to deposit, sending the checks back, or even cashing the checks and simultaneously sending a letter under separate cover reserving their right to seek payment for the balance. They did none of these things. They simply cashed checks that were explicitly sent pursuant to KRS 304.39-245 as full payment of a reasonable amount for the provided care. Having accepted the amount tendered without a reservation, they are precluded by statute from collecting the balance from their patients.

Appellants' complaint is clear that their claims are predicated on the fact that GEICO's actions left them "legally responsible for the balance and subject to a lawsuit or collection efforts from the[ir] medical provider[s]." However, as demonstrated above, the medical providers have no right to seek payment from Appellants, meaning Appellants have no claim against GEICO. Accordingly, the trial court properly granted summary judgment to GEICO.

## IV. CONCLUSION

For the reasons set forth above, we affirm the Jefferson Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANTS:  BRIEF FOR APPELLEE:

Damon B. Willis    Edward H. Stopher
C. David Ewing     Earl L. Martin, III
Louisville, Kentucky    Louisville, Kentucky